RECEIVED

NOV 27 2017

CLERK, U.S. DISTRICT COURT.
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| **JASON SIMMONS** | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 1:17-CV-794-SS** |
| | § | |
| **ZEITLER, et al., Defendants**. | § | |

## <u>PLAINTIFF JASON SIMMONS' SECOND AMENDED ORIGINAL COMPLAINT</u>

1.

**NOW COMES**, Jason Simmons, "Plaintiff," respectfully files this, a Second Amended

Original Complaint against the Texas Medical Board's: (1) EXECUTIVE COMMITTEE – Irvin

E. Zeitler, Jr., D.O., Board President: Michael Arambula, M.D., Vice-President:Paulette

Southard, Secretary/Treasurer; Margaret McNeese, M.D.; Timothy Webb, J.D.;

(2) DISCIPLINARY PROCESS REVIEW COMMITTEE - Margaret McNeese, M.D. – Chair;

Julie Attebury; Stanley S. Wang, M.D.; J.D. George Willeford III, M.D.; Sherif Z. Zaafran, M.D;

(3) Texas Medical Board Attorney, Barbara Jordan J.D. ("Jordan") and; (4) Scott Freshour J. D.

General Counsel ("Freshour"). Plaintiff is suing the named defendants in

their individual capacities. Irvin E. Zeitler, Jr., D.O., Board President: Michael Arambula, M.D.,

Vice-President: Paulette Southard, Secretary/Treasurer; Margaret McNeese, M.D.; Timothy

Webb, J.D are hereinafter referred to collectively as the "EXECUTIVE COMMITTEE".

Margaret McNeese, M.D. – Chair; Julie Attebury; Stanley S. Wang, M.D. J.D. George Willeford

III, M.D.; Sherif Z. Zaafran, M.D are hereinafter referred to collectively as the

"DISCIPLINARY PROCESS REVIEW COMMITTEE".

2.

## I. PARTIES AND SERVICE

Plaintiff, Jason Simmons, is a citizen of the United States of America and of the State of New

York. The Texas Medical Board's "Executive Committee", "Disciplinary Process Review

Committee", General Counsel, Scott Freshour J. D. and, Attorney for the Texas Medical Board,

Barbara Jordan may be served at their place of business at: 333 Guadalupe St., #610 Hobby

Building, Austin, TX 78701. Irvin E. Zeitler, Jr., D.O. may be served at his place of business at:

120 E. Harris Ave, PO BOX 1879, San Angelo, TX 76902.

3.

## II. JURISDICTION

Plaintiff's conspiracy claim arises under Section 1983 of the Civil Rights Act of 1871,

also known as the Ku Klux Klan Act and, in the alternative, the Racketeer Influenced and

Corrupt Organizations Act, codified as Title IX of the Organized Crime Control Act of 1970.

Plaintiff's claims of constitutional violations against the board employees also arise

under Section 1983.

4.

## III. FACTS

Plaintiff is an African-American and a member of a protected class. He was employed as

an internal medicine resident for the Methodist Hospitals of Dallas, ("MHD/hospital"),

from June 2007 to May 2010. The hospital held a disciplinary hearing for the plaintiff before its

Graduate Medical Education Committee, ("GMEC/ECGME"), on May 20, 2010. Plaintiff made

an audio recording of the hearing, [Exhibit N: Pages 31- 44 of Plaintiff's Appendix]. The

hospital suspended plaintiff's privileges following the hearing.

5.

The hospital reported its findings against the plaintiff to the Texas Medical Board

("TMB/board"), to initiate TMB Legal No. 10-5774, against him in June 2010. Plaintiff

was fired from the hospital after the CEO upheld the GMEC decision in July 2010.

6.

Plaintiff hired Attorney, Ray Jackson ("Jackson"), to file suit against the hospital and

represent him before the TMB. Jackson admits to being aware of plaintiff's audio recording

of the disciplinary hearing. Plaintiff gave Jackson a copy of the November 2009 letter he wrote

to the hospital's Designated Institutional Official, ("DIO"), complaining of individual

harassment, [Exhibit X: Pages 62-63 of Plaintiff's Appendix].

7.

The Texas Workforce Commission ("TWC"), granted plaintiff unemployment benefits in

the fall of 2010, despite the hospital's appeal, TWC Appeal No. 1380840-1-3. The TWC found

plaintiff had been wrongfully terminated by the hospital.

8.

Jackson filed suit against the hospital, on plaintiff's behalf, on January 4, 2011, Civil

Action No. 3:11-CV-0017-B, ("first lawsuit"). Jackson did not request discovery from the

hospital, did not depose plaintiff's witnesses nor, admit plaintiff's evidence for the cause. On

February 3, 2012, the hospital and Jackson made a joint agreement to forego mediation for Civil

Action No. 3:11-CV-0017-B, [Exhibit C II: Page 74 of Plaintiff's Appendix]. Plaintiff had no

knowledge of the agreement. On February 18, 2012, Jackson emailed the plaintiff informing him

the hospital filed a motion for summary judgment, [Exhibit W: Page 61 of Plaintiff's Appendix].

Jackson did not send plaintiff a copy of the hospital's affidavits filed with the motion, [Exhibit

O: Pages: 45 - 48 of Plaintiff's Appendix]. On March 2, 2012, Jackson submitted an affidavit to

the court in response to the hospital's motion for judgment, [Exhibit D II: Pages 75-77 of

Plaintiff's Appendix]. Plaintiff did not produce or sign the affidavit. The court granted the

hospital's motion for judgment for Civil Action No. 3:11-CV-0017-B, on April 26, 2012.

9.

The TMB did not give a final disposition for TMB Legal No. 10-5774. There is no record

on plaintiff's physician profile for the start and end date for TMB Legal No. 10-5774. In 2011,

the hospital initiated a second complaint against the plaintiff, TMB Legal No. 11-0141. Plaintiff

did not work for the hospital after the first TMB case was initiated. TMB Legal No. 10- 5774 and

TMB Legal No. 11-0141, were merged into one case. Attorney, Barbara Jordan ("Jordan"),

represented the board for TMB Legal No. 10-5774/11-0141.

10.

Jackson withdrew from representing the plaintiff for TMB Legal No. 10-5774/11-0141,

in October 2012. Plaintiff hired Attorney, Oscar San Miguel ("San Miguel") to represent him for

the board proceeding in February, 2013. San Miguel spoke with Jackson on the phone about

TMB Legal No. 10-5774/11-0141, on February 20, 2013, [Exhibit B II: Pages 71-72 of

Plaintiff's Appendix]. Plaintiff asked San Miguel what Jackson did on plaintiff's behalf for

proceeding. San Miguel told plaintiff he did not know what Jackson did. San Miguel did not

proceed to investigate what Jackson did on plaintiff's behalf for TMB Legal No. 10-5774/11-

0141. San Miguel withdrew from representing the plaintiff before the TMB in June 2013.

11.

The TMB entered a Final Order for TMB Legal No. 10-5774/11-0141, against the

plaintiff in June 2013. On August 1, 2013, the Executive Committee sent plaintiff a letter stating

4

the case against him was still "active", [Exhibit C: Page 13 of Plaintiff's Appendix]. The case

was not active. The final order for TMB Legal No. 10-5774/11-0141, was entered in June 2013.

12.

On or about November 1, 2013, the Executive Committee agreed to and did, initiate a

new proceeding, TMB Legal No. 14-0096, against the plaintiff. TMB Legal No. 14-0096, was

started because plaintiff allegedly violated the final order from June 2013. The board did not

send plaintiff a letter in the mail, email him or, serve him by a process server to inform him that

TMB Legal No. 14-0096, had been initiated. There is no start date given for TMB Legal No. 14-

0096, on plaintiff's physician profile. Jordan represented the board for TMB Legal No. 14-0096.

13.

Jordan sent plaintiff a letter and, an email to inform him about an informal settlement

conference ("ISC") for TMB Legal No. 14-0096, in December 2013. This was the first

time plaintiff became aware of the new proceeding. The board cancelled the conference. Plaintiff

attempted to reschedule a conference with the board for TMB Legal No. 14-0096, in March

2014. The board did not respond to plaintiff's request. A hearing was never held between the

plaintiff and the board for TMB Legal No. 14-0096.

14.

The Executive Committee notified the New York State Department of Health

("NYDOH"), of its findings against the plaintiff in March 2014. This caused NYDOH to

open NYOPMC #CO-13-07-3474-A, against plaintiff's New York medical license. The board

also reported its findings to the Texas State Office of Administrative Hearings ("SOAH"),

to initiate SOAH DOCKET # 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, on April 29, 2014.

15.

15.

Jordan emailed plaintiff on June 13, 2014, to inform him that the SOAH hearing was moot

because plaintiff did not pay for license renewal, [Exhibit U: Page 57-59 of Plaintiffs Appendix].

Jordan emailed plaintiff on July 3, 2014, to inform him to make his request for subpoena to the

TMB's General Counsel Department. On July 9, 20134, Jordan emailed plaintiff to inform him

that payment for the subpoena request goes to the same address, [Exhibit V: Page 60 of

Plaintiff's Appendix]. Plaintiff paid for the subpoena request. On July 14, 2014, Scott Freshour

sent plaintiff a letter in the mail stating the TMB denied his request for subpoena, [Exhibit

G: Page 18 of Plaintiff's Appendix].

16.

Later that month, plaintiff and Jordan had a hearing before the SOAH's Administrative

Law Judge ("ALJ"). During the hearing, Jordan did not present any evidence to prove

plaintiff violated the June 2013 Final Order. Instead, Jordan moved to dismiss TMB Legal No.

14-0096/SOAH DOCKET # 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. NYOPMC #CO-13-07-3474-A, TMB Legal No. 14-

0096 and, SOAH DOCKET # 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, all ended without sanctions being imposed against

the plaintiff. The Executive Committee published information about the TMB proceedings on the

TMB website for the community and potential employers to access. The Executive Committee

also published the information to the National Practitioners Database.

17.

## IV. DEFENDANTS' ACTS

**Methodist Hospitals of Dallas**

Plaintiff, an African-American, had completed 35 out of 36 months of residency training

before being fired in 2010. He was the only medical resident in his class to be fired. The hospital

discriminated against him as a member of a protected class. In February 2012, the hospital filed affidavits with the Court for Civil Action No. 3:11-CV-0017-B, to support its motion for summary judgment. The motion was granted by the Court in April 2012. In 2013, the hospital filed the same affidavits with the medical board to obtain sanctions against the plaintiff for TMB Legal No. 10-5774/11-0141. The affidavits accused plaintiff of: 1) refusing to meet with the GMEC; 2) failing to return pages; 3) becoming combative with staff on May 14, 2010, and; 4) poor performance in clinic, [Exhibit O]. The TMB found the allegations to be true in support of its final order, [Exhibit A]. The information contained in the hospital's affidavits was fabricated and used as pretext for plaintiff's firing:

On May 20, 2010, the hospital provided plaintiff with a suspension letter stating the reasons why he was being subjected to a disciplinary hearing, [Exhibit K: Pages 24 -25 of Plaintiff's Appendix]. ACGME policy IV.C1.b. mandated the hospital provide plaintiff due process during the hearing, [Exhibit P: Page 49 of Plaintiff's Appendix].

*Refusal of GMEC Meeting*

The suspension letter accused plaintiff of refusing to meet with the GMEC. On May 11, 2010, the DIO wrote an email to Dr. Hunter informing her that plaintiff requested a meeting with the Executive Committee, [Exhibit Q: Page 50 of Plaintiff's Appendix]. The documentary evidence shows that plaintiff did not refuse to meet with the GMEC. Plaintiff requested the meeting himself prior to May 11, 2010, and, met with the committee on May 20, 2010. The hospital's declaration that plaintiff refused to meet with the GMEC is false.

*Non - Disclosure of Pages*

The allegation that plaintiff ignored pages also served as a reason to discipline him, [Exhibit K]. The hospital did not disclose the pager records or, the pages plaintiff allegedly ignored during the hearing, [Exhibit N], in violation of ACGME policy IV.C1.b.

*Right to Disclosure "Combativeness" Allegation*

In her affidavit submitted to the Court and TMB, Dr. Hunter swore the plaintiff became combative on May 14, 2010, [Exhibit O]. During the hearing, the hospital did not disclose its allegation that plaintiff became combative, [Exhibit N]. The allegation was also not stated in the suspension letter, [Exhibit K]. Plaintiff was denied the opportunity to defend against the allegation.

*Right to Disclosure - Continuity Clinic*

In her affidavit submitted to the Court and TMB, Dr. Isitri Modak swore she could not pass the plaintiff for "Continuity Clinic" due to declining clinical performance and unprofessional conduct, [Exhibit O]. The hospital did not disclose the allegation that plaintiff failed his clinic rotation during the hearing, [Exhibit N]. The allegation was also not stated in the suspension letter. Plaintiff never had the opportunity to respond to the charge. The hospital fired the plaintiff on grounds not stated in his notice and, on ground not discussed during the GMEC meeting, in violation of ACGME policy IV.C1b. The documentary evidence shows the material information provided by the hospital, on which the board based their findings of fact, was fabricated. The declarations were not supported by objective evidence. Plaintiff alleges the affidavits were intentionally fabricated to supply the board with the necessary facts to obtain sanctions against him.

18.

**Ray Jackson**

8

*Concealment of Affidavits*

On February 18, 2012, Jackson sent the plaintiff an email informing him of the hospital's motion for summary judgment for Civil Action No. 3:11-CV-0017-B, [Exhibit W]. The email did not contain the hospital's affidavits, [Exhibit O]. Only the hospital's brief in support of its motion for summary judgment was included in the email labeled: *simmons 17716278265.pdf.*, [E II: Page 78 of Plaintiff's Appendix]. Jackson had the affidavits in his possession as they were given to him directly while serving as the plaintiff's lawyer for the cause. The affidavits were material in that they were submitted by the hospital in support of its motion for summary judgment.

19.

Jackson knew the plaintiff was ignorant of the affidavits because Jackson was acting as the plaintiff's lawyer and, the material information was given directly to Jackson. Jackson knew the plaintiff did not have equal opportunity to discover the facts because the plaintiff was not communicating with the hospital or, the federal court directly. Plaintiff resided in New York in February 2012, and, was dependent on Jackson to reasonably represent him.

20.

Jackson's intent to conceal the affidavits is evidenced by his conduct in writing a confusing email: "Methodist has filed a Motion for Summary Judgment trying to gt our case thrown out. Please look at this a email a response to their allegations…" and, emailing the plaintiff at the "last minute" on a Saturday, 21 days after the motion for summary judgment was made, [Exhibit W]. Jackson provided the plaintiff limited information and, a limited amount of time to prepare a proper response.

21.

The content of the affidavits would have suggested to the plaintiff that Jackson did not request discovery from the hospital, did not depose plaintiff's witnesses nor, admit the plaintiff's evidence. By withholding the affidavits, Jackson concealed these facts during the litigation. Since plaintiff relied only on the information he received from Jackson, plaintiff could not prepare an appropriate response to the hospital's motion, for example, demand that Jackson admit, [Exhibit X], to prove the DIO's declaration that plaintiff never made an individual complaint of harassment was false or, demand that Jackson depose plaintiff's witnesses to corroborate the DIO's description of the work environment.

22.

In his response to Jackson sent on Monday, February 20, 2012, plaintiff stated: "*I really cannot think of anything to add other than what I have already said or provided as evidence. My allegations needed to be corroborated with witness testimony...Regarding the Rheumatology issue, I have provided evidence of my efforts to do the rotation summer of 2009. I have provided copies of the schedule that did have me scheduled to Rheumatology in April 2010....I can't read the last few pages of the motion*, [Exhibit Y: Pages 64 -65 of Plaintiff's Appendix]." Plaintiff's response shows he wanted Jackson to focus on his evidence and witness testimony.

23.

Judgment was entered for the hospital for Civil Action No. 3:11-CV-0017-B, as Judge Boyle determined the plaintiff had no evidence. Jackson's email served to lessen the suspect appearance of his malpractice and the suspect appearance of the conspiracy. It also served to deter plaintiff from demanding his evidence be submitted before the lawsuit was dismissed. Plaintiff's evidence proving the hospital's pre-textual reasons for firing him was effectively "postponed". It was foreseeable that the mail and wires would be used by Jackson, as the use of

mail and wires is a normal course of business for the defendant and was a normal vehicle of communication between the plaintiff and Jackson.

24.

*"Entire File"*

In the summer of 2013, plaintiff requested Jackson send him his complete file from Civil Action No. 3:11-CV-0017-B. After repeated requests and, after plaintiff informed Jackson that pieces of evidence were missing from the file, Jackson stated to the plaintiff on August 6, 2013, that he sent the plaintiff his "entire file", [Exhibit A II:Pages 69-70 of Plaintiff's Appendix].

25.

The file was not complete. Plaintiff's vacation contract between the plaintiff and hospital; plaintiff's November 2009 letter to the DIO complaining of harassment, [Exhibit X]; the attorney-client contract; record of the alleged deposition Jackson took for the first lawsuit; the affidavit the plaintiff allegedly drafted, then signed before Cristal Cienfuegos on February 23, 2012, [Exhibit D II]; were all missing from the "entire file".

26.

Plaintiff informed Jackson that information was missing from the file and, invited Jackson to resend the complete file. Jackson did not comply with the request. Of note, [Exhibit X], contains Jackson's law firm information at the top indicating that it was in his possession in October 2010. Jackson was aware of the document's existence but did not include it in the August 6, 2013, email.

27.

Jackson intended for the plaintiff to believe that his file was complete and that plaintiff must now pursue claims against the hospital with what he had. Importantly, Jackson wanted to conceal evidence of his illegal conduct, (i.e. forged affidavit and, motion to forego mediation).

28.

Plaintiff relied on Jackson's email by filing a second cause, Civil Action No. 3:14-CV-02958-B, against the hospital without knowledge of the forged affidavit and without knowledge of Jackson's agreement to forego mediation. Plaintiff did not make a Saving Clause or, Extrinsic Fraud claim during proceedings for the second action. Plaintiff's inaction in making claims of fraud upon the court and extrinsic fraud for Civil Action No. 3:14-CV-02958-B, shows Jackson's email effectively postponed plaintiff raising these defenses. According to *Cadle Co. v. Shultz*, Jackson's email was in execution of a fraudulent scheme.

29.

Due to Jackson's withholding the "entire file", plaintiff was prevented from providing facts to the Court for Civil Action No. 3:14-CV-02958-B, to show the judgment from the "first lawsuit" should be set aside or, the statute of limitations should be waived. The hospital successfully argued plaintiff's breach of contract and IIWPC claims stated here were time barred.

30.

**Oscar San Miguel**

*Concealment of Jackson's Conduct*

On February 20, 2013, San Miguel spoke with Jackson on the phone about TMB Legal No. 10-5774/11-0141. Plaintiff asked San Miguel, specifically, if Jackson requested production of the medical records from the hospital for TMB Legal No. 10-5774/11-0141, [Exhibit B II: Pages 71-72 of Plaintiff's Appendix]. San Miguel claimed he had "no idea" what Jackson did about the

medical records, [Exhibit B II]. This is untrue. The medical records related to San Miguel's representation of the plaintiff. He had the responsibility to provide plaintiff with the information from his discussion with Jackson. Even if San Miguel was truly ignorant of Jackson's efforts, San Miguel had the duty to obtain the requested information as it related to his representation of the plaintiff. San Miguel was not thorough in his study of the facts proposed by the plaintiff. Plaintiff stressed the importance of the medical records issue to San Miguel, but, San Miguel did not seek to acquire the information. Instead, San Miguel emailed the plaintiff saying he "had no idea". San Miguel's statement about the records and, his refusal to act on plaintiff's request were done to deter plaintiff from making further inquiries about the medical records and to conceal the existence of the conspiracy.

31.

San Miguel knew plaintiff was ignorant of the true status of the medical records. The content of plaintiff's email, [Exhibit B II], reflected plaintiff's desire to obtain the information. San Miguel knew Jackson did not provide the information to the plaintiff evident in the plaintiff's need to pose the question. Additionally, the plaintiff resided in New York and hired San Miguel to act as his agent before the TMB. The plaintiff was not communicating directly with the TMB and, relied on San Miguel to provide the information.

32.

San Miguel told the plaintiff he had "no idea" about the medical records and Jackson; the medical record issue was "secondary" and; that time was "so short" to file a motion for a rehearing, [Exhibit B II]. San Miguel's statements were in spite of the fact that information regarding Jackson's ineffective counsel could have served as justification for a rehearing in

itself. San Miguel's direct statements were intended to deter plaintiff from asking further questions about the medical records and ineffective counsel he received from Jackson.

<div align="center">33.</div>

Plaintiff remained ignorant of the status of the medical records, ignorant of Jackson's deliberate ineffective counsel and, ignorant of the fraudulent scheme against him.
Plaintiff allowed San Miguel to continue representing him. Plaintiff responded to San Miguel's statement believing time was "so" short. Ultimately, the TMB's 2013 Final Order was entered without the medical records being obtained by San Miguel as he filed other motions. Plaintiff was unable to prove to the board that he did not practice medicine in a way that created a risk to the public and, that the hospitals allegation that he wrote unauthorized orders was false.

<div align="center">34.</div>

Plaintiff's professional reputation has been damaged by the Board's public reprimand, plaintiff has been defamed to other medical agencies and, plaintiff has been limited in his licensing and, job opportunities as a result. It was foreseeable that the mail and wires would be used by San Miguel. The use of mail and wires is a normal course of business for the defendant and was a normal vehicle of communication between the plaintiff and San Miguel.

<div align="center">35.</div>

**Texas Medical Board**

According to Tex. Occ. Code § 156.001, medical licensees register every two years. Plaintiff last registered with the TMB as a medical licensee on June 28, 2011, under License No. N-104. His permit expired on June 30, 2013.

<div align="center">36.</div>

The TMB is an agency of the executive branch of the state government of Texas. It has the power to regulate the license permits of medical licensees. The TMB's authority is granted by the Texas Constitution. Texas Occupations Code Title 3. Health Professions Subtitle B. 9 Physicians Chapter 151. sets out the general provisions for the board. Tex. Occ. Code § 153.005. (a) *allows the board to act under its rules through the executive director, the executive committee, or another committee. Except as otherwise provided by this subtitle, the executive committee consists of the president, vice president, and secretary-treasurer of the board.* According to the TMB disciplinary protocol, [Exhibit H: Pages 19 -21 of Plaintiff's Appendix], the committees that act through the executive committee include: The Disciplinary Process Review Committee and; the Litigation Department ("Board Committees").

37.

Pursuant to Tex. Occ. Code § 164.001., the Executive Committee had the power to impose sanctions on the plaintiff's Texas medical license. On June 14, 2013, the TMB's Executive Committee entered a final order against the plaintiff prohibiting him from practicing medicine in Texas until he complied with the sanctions imposed, [Exhibit A: Pages 1-11 of Plaintiff's Appendix].

38.

On August 1, 2013, the Executive Committee sent plaintiff a letter in the mail whereby the committee stated the proceeding which served as the basis for the 2013 order was still active and, instructed plaintiff to wait three months for an update, [Exhibit C]. The proceeding which served as the basis for the Final Order was not active when the board drafted and sent plaintiff the letter in August. The Executive Committee itself entered the final order in June. A proper inquiry into the circumstances of the order would have shown the case was in fact, closed before

"Exhibit C" was drafted and sent to the plaintiff. The members of the Executive Committee agreed to and did send plaintiff a letter with false information and false instructions.

39.

Tex. Occ. Code § 164.009 states: *A person whose license to practice medicine has been revoked or who is subject to other disciplinary action by the board may appeal to a Travis County district court not later than the 30th day after the date the board decision is final.* The text of the letter shows the board intended for plaintiff to believe the proceeding against him was still open, a final determination had not been made and, for plaintiff to wait for an update. Plaintiff did not appeal the Final Order. As instructed, plaintiff waited for the board to update him on the case he believed was still open.

40.

As the licensing authority for Texas, the Executive Committee owed plaintiff a fiduciary duty to provide for fair and honest procedures in the sanctioning of his license. The committee had the duty to inform plaintiff that the information in "Exhibit C" was erroneous. In response to "Exhibit C", plaintiff a made motion to admit evidence into the case he believed was still "open", [Exhibit S: Page 55 of Plaintiff's Appendix]. "Exhibit C" caused plaintiff to be deprived of his right to appeal the TMB Legal No. 10-5774/11-0141, Final Order. Plaintiff did not learn that "Exhibit C" contained false information or that the case was actually closed until Barbara Jordan mailed him in December 2013, regarding a new TMB legal proceeding, TMB Legal No. 14-0096.

41.

According to Tex. Occ. Code § 156.005, *if a licensee's registration permit has been expired for one year or longer, the license automatically cancels unless an investigation is*

*pending*. Plaintiff's license was set to cancel in June 2014. Before his license canceled, the

Executive Committee caused TMB Legal No. 14-0096, to be initiated against him in November

2013. The new proceeding was filed because plaintiff allegedly failed to comply with the June

2013 Final Order, failed to respond to requests for information and, displayed conduct likely to

deceive/defraud the public or injure the public.

<div align="center">42.</div>

Plaintiff never received formal notice of the complaint for TMB Legal No. 14-0096,

pursuant to Tex. Occ. Code § Sec. 164.005 . Plaintiff lived in New York for the duration of 2013,

and did not receive notice in the mail or email. Plaintiff was not served by a process server.

Plaintiff never received the board's written affidavit that detailed the nature of the charge as

required by § Sec. 164.005. There is no date given for the initiation of TMB Legal No. 14-0096,

on plaintiff's physician profile, [Exhibit R: Pages 51-54 of Plaintiff's Appendix]. In the TMB's

complaint filed with the SOAH in April 2014, it concedes in its Procedural Background that

plaintiff only received notice of an informal settlement conference for the proceeding. The board

does not suggest plaintiff was served with notice for the initiation of TMB Legal No. 14-0096,

[Exhibit T: Page 56 of Plaintiff's Appendix].

<div align="center">43.</div>

It is plaintiff's belief that TMB Legal No. 14-0096 was started on or about November 1,

2013. The Executive Committee sent plaintiff "Exhibit C" on August 1, 2013, and instructed him

to wait three months for an update on the old proceeding. Jordan emailed the plaintiff in

December 2013 to inform him about an ISC for the new proceeding. Therefore, TMB Legal No.

14- 0096, commenced on or about November 1, 2013. Of note, the executive committee accused

<div align="center">17</div>

plaintiff of failing to respond to requests for information during the time when the board itself

instructed plaintiff to wait three months for an update, [Exhibit C].

<div align="center">44.</div>

The purported first step of the board's disciplinary process is to determine, *"whether there is*

*evidence to support an allegation that there has been a violation of the Medical Practice*

*Act,"* [Exhibit H: Pages 19 -21 of Plaintiff's Appendix]. The committees never disclosed to the

plaintiff, their "known" facts that were established after a reasonable pre-filing investigation to

justify its reasonable belief that a claim against the plaintiff could be established to the

satisfaction of a court.

<div align="center">45.</div>

Acting pursuant to Tex. Occ. Code § 164.0025, the Executive Committee agreed to and

did schedule an ISC for TMB Legal No. 14-0096, in December 2013. Plaintiff did not reach an

agreed settlement with the board's committees for TMB Legal 14-0096, prior the scheduling of

the December ISC. The committees never requested information from the plaintiff in response to

its findings before scheduling the ISC. Plaintiff never requested the complaint be referred for

informal proceedings. The "Board Committees", without reviewing any information from the

plaintiff, and acting pursuant to Tex. Occ. Code § 164.0025 (b), determined TMB Legal No. 14-

0096, should not be dismissed or settled. The committees agreed to and did refer TMB Legal No.

14-0096, to Jordan to litigate before the SOAH. In doing so, the committees deprived plaintiff of

his right to be heard.

<div align="center">46.</div>

On December 16 and 17, respectively, of 2013, Barbara Jordan sent plaintiff a

correspondence in the mail and, via email whereby Jordan informed plaintiff about the

<div align="center">18</div>

rescheduling of a disciplinary ISC for TMB Legal No. 14-0096, [Exhibits: E and; B - Pages: 15;

and; 12, respectively, of Plaintiff's Appendix]. Jordan's mail and email was the first time

plaintiff became aware of TMB Legal No. 14-0096. It was also the first time plaintiff became

aware the information contained in "Exhibit C" was incorrect. Jordan's communications caused

plaintiff to spend time and money in making appearances before the TMB and SOAH.

<div align="center">47.</div>

After TMB Legal No. 14-0096, was assigned to Jordan, the TMB committees continued

to deny plaintiff the opportunity to be heard. The December ISC was canceled and

never rescheduled. Jordan did not conduct discovery from the plaintiff. She refused to discuss the

matter. On March 5, 2014, plaintiff attempted to schedule a hearing, admit evidence and, request

production of documents [Exhibit I: Page 22 of Plaintiff's Appendix]. All of plaintiff's requests

were ignored by the board. A hearing was never held between the plaintiff and the board for

TMB Legal No. 14-0096.

<div align="center">48.</div>

The members of the executive committee agreed to and did report its findings for TMB

Legal No. 14-0096, to the SOAH causing it to initiate SOAH DOCKET # 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, on April

29, 2014. Plaintiff appeared before the SOAH on June 20, 2014, when he uploaded documents to

the docket [Exhibit F: Page 17 of Plaintiff's Appendix] and, appeared before the ALJ in July

2014.

<div align="center">49.</div>

Jordan sent the plaintiff several emails regarding TMB Legal No. 14-0096. At no point

did she concede that there was no evidence to support it. On June 13, 2014, Jordan sent plaintiff

an email stating TMB Legal No. 14-0096, was moot because plaintiff had not paid for license

<div align="center">19</div>

renewal, [Exhibit U]. This is false. **Tex. Occ. Code § 156.005** states that a license does not automatically cancel if an investigation is pending. It does not state that a pending proceeding becomes moot simply because a permit hasn't been paid for. Jordan attempted to deceive the plaintiff in order to lessen the suspect appearance of the fraudulent scheme to obtain a judgment against him and fraudulent scheme to permanently revoke his medical license.

50.

On June 18, 2014, Jordan sent plaintiff another email regarding TMB Legal No. 14-0096. Jordan stated the proceeding was moot because the June 2013 Order terminated because plaintiff's license was no longer active, [Exhibit U]. TMB Legal No. 14-0096, began in November 2013, allegedly because plaintiff did not comply with the final order from June 2013. The issue was not whether the final order had terminated by June 2014. Again, Jordan made false statements to lessen the suspect appearance of the fraudulent scheme to permanently revoke plaintiff's medical license. Jordan also used the mail/wires in attempt to get plaintiff to agree to dismiss SOAH DOCKET #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, under false pretenses in effort to deny plaintiff the right to a fair and impartial hearing.

51.

On July 3, 2014, Jordan emailed the plaintiff instructing him to submit his request for subpoena to the TMB litigation department. On July 9, 2014, Jordan emailed the plaintiff to inform him that payment for the request should be submitted to the same address [Exhibit V]. Plaintiff paid for the subpoena request evident in the board's "ruling" on it. Jordan's emails regarding the subpoena were executed as a part of the scheme to place a burden on plaintiff's right to have a subpoena issued for his disciplinary hearing.

52.

On July 14, 2014, Scott Freshour sent plaintiff a letter in the mail whereby he denied plaintiff's request for subpoena of the medical records from the hospital. Freshour stated the records were not related to the "current" allegations for SOAH DOCKET #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, [Exhibit G]. Freshour's letter lessened the suspect appearance of TMB Legal No. 14-0096, by implying there were facts to support TMB Legal No. 14-0096, that were separate and apart from the facts supporting the final order. Freshour's letter was fraudulent also because he implied the TMB had the power to deny plaintiff's subpoena request for the proceeding. Instead of conceding that it did not have the power to rule on plaintiff's request, the board made a misrepresentation that it did. This was done to deter plaintiff from seeking a ruling on his subpoena request from the proper authorities. Plaintiff was denied the opportunity to prove the original complaint by the hospital to obtain the June 2013 Final Order was fabricated, particularly, the hospital's allegation that plaintiff wrote unauthorized orders was false. Freshour's letter placed an undue burden on plaintiff's right to have a subpoena issued for his disciplinary proceeding.

53.

Tex. Occ. Code § **164.009** granted plaintiff the right to appeal the TMB's June 2013 Final Order. When the Executive Committee sent plaintiff "Exhibit C", it caused him to be denied the right to appeal. When the Executive Committee initiated TMB Legal No. 14-0096, against the plaintiff's medical license, it was acting under the color of the Texas Constitution. The Due Process Clauses of the Fifth and Fourteenth Amendments to The United States Constitution, Tex. Occ. Code § 164.003. (b) (3) and, Tex. Occ. Code § 164.004, all required the committee to provide plaintiff due process when exposing him to a disciplinary proceeding. The Executive Committee did not provide plaintiff with formal notice or a hearing for TMB Legal No. 14-0096.

The Executive Committee's failure to give plaintiff proper notice and a hearing for the proceeding, violated plaintiff's right to due process required by the US Constitution., Tex. Occ. Code § 164.003. (b) (3) and, Tex. Occ. Code § 164.004. There was no basis in fact or in law to bring TMB Legal No. 14-0096, against the plaintiff. Plaintiff was innocent of the charges. TMB Legal No. 14-0096, caused plaintiff to spend time and money making appearances before the TMB, SOAH and NYDOH, thereby denying plaintiff the ability to practice his profession without the unjustified label of infamy. 18 U.S.C. § 1343, makes it criminal to use the mail and wires to execute a scheme to defraud for obtaining money or property by means of false or fraudulent pretenses. Jordan's emails to the plaintiff on July 3 and 9, 2014, sought to extort money from the plaintiff by fraudulent means (i.e. subpoena request fee). All emails and letters sent by the board regarding TMB Legal No. 14-0096, were part of a scheme to induce plaintiff to make payment in the form of sanctions for allegedly violating its Final Order, and a scheme to permanently revoke plaintiff's license for the alleged violation. Freshour's communication to the plaintiff was criminal in that he used the mail/wires to imply he was a clerk of a justice court in violation of Tex**as Penal Code - PENAL § 37.11**. Impersonating Public Servant. The board's deliberate removal of all information from the board's website regarding TMB Legal No. 14-0096, indicates the members of the TMB were aware of their criminal behavior.

54.

## V. SECTION § 1983 VIOLATIONS

### A. Section 42 U.S.C. § 1983 and Section 42 U.S.C. § 1985 Civil Conspiracy

Plaintiff alleges a conspiracy existed among the Methodist Hospitals of Dallas, Ray Jackson, Oscar San Miguel and the stated members of the Texas Medical Board. The defendants agreed to and did conspire to: discriminate against the plaintiff in the terms of his

employment as a medical doctor; deny plaintiff of his ability to enter into his contract with John

Peter Smith Hospital to be trained in Sports Medicine and Pain Intervention; sanction plaintiff's

Texas medical license; deny plaintiff of a right to a fair and impartial hearing for Civil Action

Nos. 3:11-CV-0017-B, and 3:14-CV-02958-B; deny plaintiff of the right to a fair and impartial

hearing for TMB Legal No. 10-5774/11-0141; deprive plaintiff of his right to appeal the TMB

2013 Final Order; deny plaintiff of the right to a fair and impartial hearing for TMB Legal No.

14-0096; induce plaintiff to make payment in the form of sanctions for allegedly violating a

TMB Final Order, execute a scheme to permanently revoke plaintiff's medical license; obtain

money from the plaintiff by fraudulent means; keep plaintiff, federal courts and, the SOAH

ignorant of the true facts regarding Civil Action Nos. 3:11-CV-0017-B and 3:14-CV-02958-B

and, TMB Legal Nos. 10-5774/11-0141, and 14-0096; injure plaintiff's professional reputation as

a medical doctor; deprive plaintiff of his right to freely practice medicine across the United

States without an unjustified label of infamy and; burden plaintiff's right to have a subpoena

issued for his disciplinary hearing. Plaintiff alleges the defendants discriminated against him as a

member of a protected class.

<div align="center">55.</div>

<div align="center">**AGREEMENT**</div>

Plaintiff incorporates here, the foregoing paragraphs to allege the acts committed by the

hospital. The hospital's knowledge of the conspiracy arises from the fact that the hospital first

violated plaintiff's rights at the disciplinary hearing in May 2010. The hospital did not provide

adequate notice of the charges and planned action against the plaintiff; attempted to prohibit

plaintiff from recording the hearing; failed to disclose evidence and complete list of charges

against the plaintiff; refused to allow plaintiff to cross examine witnesses and exchange

<div align="center">23</div>

evidence, disciplined plaintiff for reasons not stated in his suspension letter and; attempted to

force the plaintiff to change his responses, [Exhibit N]. The hospital could not meet the

preponderance of evidence standard to deny plaintiff unemployment benefits from the TWC in

2010, [Exhibit L].

<div align="center">56.</div>

Jackson knew of the TWC's ruling and the fact that the hospital did not have evidence to justify

its action. The hospital and Jackson knew that the hospital fired the plaintiff without cause.

Jackson knew of evidence establishing plaintiff's claims against the hospital prior to Civil Action

No. 3:11-CV-0017-B, being disposed of. Jackson was provided with plaintiff's letter to the

hospital's DIO in November 2009, complaining of individual harassment. Jackson copied the

letter in October 2010, [Exhibit X]. Jackson has also admitted to being aware of plaintiff's audio

recording of the disciplinary hearing on May 20, 2010.

<div align="center">57.</div>

Jackson and the hospital agreed to and did conceal the hospital's lack of evidence from

the Court for plaintiff's racial discrimination lawsuit, Civil Action No. 3:11-CV-0017-B. On

February 3, 2012, the hospital and Jackson, without plaintiff's knowledge and consent, agreed to

forego mediation in Civil Action No. 3:11-CV-0017-B, [Exhibit C II]. By foregoing mediation,

plaintiff was prevented from being apprised of the evidence on file with the Court. Plaintiff never

viewed the evidence the hospital used to support its motion for summary judgment. Jackson

failed to admit plaintiff's "Exhibits N and, X" in response to the hospital's motion for summary

judgment and; submitted a forged instrument to the Court, [Exhibit D II]. All acts denied

plaintiff the right to a fair trial. Each of Jackson's acts served to benefit the hospital thereby

allowing it to avoid liability for wrongful termination. The acts also benefit Jackson by

<div align="center">24</div>

concealing his malpractice. After making the agreement with Jackson, the hospital knowingly provided the Court and TMB with false affidavits. The affidavits enabled the hospital to obtain a dismissal of plaintiff's claims for the first lawsuit and, obtain a final order against the plaintiff for TMB Legal No. 10-5774/11-0141, thereby reinforcing the narrative that it had done nothing wrong in firing him in 2010.

58.

Jackson and the hospital were at all times an interdependent and coordinated association working to advance a common goal (i.e. conceal facts from the plaintiff, Court and, SOAH). Their acts suppressed plaintiff's objective evidence and allowed the Court and TMB to consider only the hospital's fabricated affidavits. By committing the foregoing acts, Jackson and the hospital conspired to violate sections 1962 (a), (b), and (c), on or prior to February 3, 2012.

59.

Jackson discussed plaintiff's TMB Legal No. 10-5774/11-0141, with San Miguel over the phone on February 20, 2013, [Exhibit B II]. Jackson recruited San Miguel to join the conspiracy during the phone call. Plaintiff incorporates here, the "*Concealment of Jackson's Conduct*" claim against San Miguel to show he had knowledge of the nature of the conspiracy to deny plaintiff his right to a fair and impartial hearing. San Miguel did not pursue plaintiff's inquiries nor investigate the hospital's allegations in order to conceal Jackson's ineffective counsel and to deter plaintiff from pursuing the information that would have further challenged the hospital's allegations against him for TMB Legal No. 10-5774/11-0141. San Miguel knew of and agreed to the goal of the conspiracy and, agreed to violate sections 1962 (a), (b), and (c), on or about February 20, 2013.

60.

Jordan never informed San Miguel of the board's Motion for Summary Disposition against the plaintiff for TMB Legal No. 10-5774/11-0141. As San Miguel was unaware of the TMB's motion, he did not oppose it, [Exhibit M: Pages 28 -30 of Plaintiff's Appendix]. San Miguel's failure to oppose the motion resulted in a prejudicial order being entered against the plaintiff. The hospital benefitted from San Miguel's conduct because it allowed the hospital's "new" allegations against the plaintiff to go unchallenged thereby allowing the SOAH to recommend sanctions against the plaintiff.

61.

TMB Legal No. 10-5774, originally accused plaintiff of writing unauthorized orders. On or about August 16, 2011, the hospital filed a second complaint against the plaintiff, TMB Legal No. 11-0141, without a final disposition of the first complaint, TMB Legal No. 10-5774. The Executive Committee members agreed to merge TMB Legal No. 10-5774 and TMB Legal No. 11-0141, into one case. The hospital and the Executive Committee agreed in August 2011, to act in concert to prosecute plaintiff with the use of "new" (and false) information in the form of TMB Legal No. 10-5774/11-0141. The Executive Committees' act benefitted the hospital by allowing it to bring "new" allegations. The TMB and hospital agreed to and did conceal the hospital's lack of evidence for its original allegations by merging the cases.

62.

The TMB Executive Committee and its associated committees intended to sanction plaintiff's medical license before it initiated TMB Legal No. 14-0096. TMB protocols required all evidence to support a complaint to be reviewed by the board several times even before an investigation is undertaken. The members of the TMB deliberately bypassed their own rules, ignored the state's statutes requiring due process and ignored plaintiff's request for hearing. The

members of the board deliberately and intentionally prevented plaintiff from presenting contrary evidence in support of his defense.

<p style="text-align:center">63.</p>

The hospital and board's common actions (i.e. joint prosecution of TMB Legal No. 10-5774/11-0141, and initiation of separate respective complaints against the plaintiff), reflect a shared goal to sanction plaintiff's medical license. Denying plaintiff a fair and impartial hearing for his board proceedings allowed the false narrative to persist that the hospital had done nothing wrong in firing him. The denial of plaintiff's right to appeal was to the hospital and board's mutual benefit. It prevented plaintiff from challenging the hospital's allegations and allowed the TMB's order to become final.The Executive Committees' acts regarding TMB Legal No.14-0096, helped to solidify the narrative that plaintiff's practice of medicine created a risk to the public. All acts occurred following the agreement made between the Executive Committee and hospital in August 2011. The hospital and TMB members knew of and agreed to the goal of the conspiracy and, agreed to violate sections 1962 (a), (b), and (c), on or prior to August 2011.

<p style="text-align:center">64.</p>

<p style="text-align:center">**DAMAGES**</p>

By reason of the foregoing paragraphs, plaintiff was: denied of his ability to enter into his contract with John Peter Smith Hospital to be trained in Sports Medicine and Pain Intervention; denied of a meaningful opportunity to present and defend against the claims in litigation for Civil Action Nos. 3:11-CV-0017-B, and 3:14-CV-02958-B; denied of a meaningful opportunity to present and defend against the claims in litigation for TMB Legal No. 10-5774/11-0141; denied the ability to practice medicine in Texas; deprived of his right to appeal

the decision for TMB Legal No. 10-5774/11-0141, and; denied of a meaningful opportunity to present and defend against the claims in litigation for TMB Legal No. 14-0096 .

65.

Plaintiff was induced to make appearances before the TMB and SOAH in response to Jordan's mail and emails regarding TMB Legal No. 14-0096. In making the appearances, plaintiff was denied the liberty interest in being free to move about, live, and practice his profession without the burden of an unjustified label of infamy. Plaintiff was, again, denied the liberty interest in being free to move about, live, and practice his profession without the burden of an unjustified label of infamy when the New York Office of Professional Medical Conduct, initiated proceedings against him in 2014, after receiving information from the TMB that he violated Texas' Medical Practice Act. Plaintiff's defense of himself for NYOPMC #CO-13-07-3474-A, resulted in the proceeding being abandoned without sanctions imposed.

66.

Plaintiff suffered reputational injury in his profession when the Executive Committee "posted" its findings that plaintiff violated the Medical Practice Act in the TMB Bulletin, to the SOAH, to the NYDOH, on plaintiff's physician profile for the TMB website and, to the National Practitioner's Database. Plaintiff is currently being denied the ability to freely obtain a license in all US states and freely obtain credentialing by hospitals and insurance companies due to publication of all decisions secured by the defendants' conspiracy against him and denial of his rights. Plaintiff's ability to earn a living in his profession has been diminished.

67.

Indeed, the publications have already injured plaintiff's business reputation. Employers who review the information posted about the plaintiff on the Texas Medical Board Website and

National Practitioner's Database are unlikely to credential plaintiff and offer him employment, because the TMB and its co-conspirators have caused them to believe plaintiff practices medicine in a way that creates a risk to the public. Plaintiff has permanently lost potential job opportunities due to his inability to obtain board certification and train in Sports Medicine and Pain Intervention. As long as the board continues to publish the stated information, plaintiff's business reputation will continue to be injured.  By reason of the foregoing, plaintiff has also been emotionally traumatized suffering from irritability, restlessness and inability to concentrate. In 2009, plaintiff was awarded Arnold P. Gold Foundation Humanism and Excellence in Teaching Award. In 2010, plaintiff was awarded a fellowship opportunity to train in Sports Medicine and Pain Intervention. Plaintiff's emotional trauma has been exacerbated by the fact that has to explain to potential employers that the information posted by the board is not true and he can still provide the same standard of care that previously won him national recognition. The damages claimed by the plaintiff for the deprivation of his right to a fair and impartial hearing for Civil Action Nos. 3:11-CV-0017-B, and 3:14-CV-02958-B, are not a matter of pure speculation or conjecture. Plaintiff's compensable injury is based on the hospital's breach of contract and intentional interference with plaintiff's contract to train in Sports Medicine and Pain Intervention with JPS.

68.

## B. 42 U.S.C. § 1983 Action

Plaintiff re-alleges and incorporates here, the foregoing paragraphs to establish the acts committed by the TMB members acting under the color of the Texas Constitution. By reason of the foregoing, plaintiff's civil rights were violated including, his: right to be appeal the TMB 2013 Final Order pursuant to Tex. Occ. Code § 164.009; his right to have a meaningful

opportunity to present and defend against the claims in litigation for TMB Legal No. 14-0096, pursuant to Tex. Occ. Codes: § 164.003. (b) (3), § 164.004, § 164.005. and, The Due Process Clauses of the Fifth and Fourteenth Amendments to The US Constitution; his right to be free to move about, live, and practice his profession without the burden of an unjustified label of infamy; his right to have a subpoena issued for his disciplinary proceeding and his right to have a meaningful opportunity to present and defend against the claims in litigation for Civil Action No. 3:14-CV-02958-B.

69.

The Due Process Clause prohibits government officials from arbitrarily depriving a person of certain constitutionally protected fundamental property or liberty interests (*Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1026 (9th Cir. 2007). These interests include the right to pursue a given profession (*Greene v. McElroy,* 360 U.S. 474, 492 (1959). Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential (*Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971). "To establish a liberty interest sufficient to implicate the fourteenth amendment safeguards, the individual must be not only stigmatized but also stigmatized in connection with... [a] government official's conduct [that] deprived the plaintiff of a previously recognized property or liberty interest in addition to damaging the plaintiff's reputation (*Siegert v. Gilley*, 500 U.S. 226, 234, 111 S.Ct. 1789, 1794, 114 L.Ed.2d 277 (1991)."

70.

The Executive Committee and its committees denied plaintiff the constitutionally required procedures necessary to challenge their findings when they denied him notice and an

opportunity to be heard for TMB Legal No. 14-0096. The Executive Committees denial of

procedural protections allowed it to report its unchallenged findings to the NYDOH and, SOAH

in 2014. The Executive Committee caused plaintiff to make an appearance before both the

NYDOH and SOAH to defend himself, [Exhibits: J and F: Pages 23 and 17, respectively of

Plaintiff's Appendix], thereby denying plaintiff the ability to freely practice his profession across

the U.S. without the burden of the TMB's accusation that violated the Medical Practice Act. The

"liberty interest" here is the interest an individual has in being free to move about, live, and

practice his profession without the burden of an unjustified label of infamy (*Board of Regents v.*

*Roth*, 408 U.S. at 572, 92 S.Ct. at 2706, 33 L.Ed.2d at 557).

71.

In the case of *Wisconsin v Constantineau*, the US Supreme Court found a similar interest

to exist. In that case the chief of police of Hartford, without notice or hearing to the plaintiff,

caused to be posted a notice in all retail liquor outlets in Hartford that sales or gifts of liquors to

the plaintiff were forbidden for one year. The plaintiff then sued the chief of police for damages

and injunctive relief. The State of Wisconsin intervened as a defendant on the injunctive phase of

the case (*Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971).

72.

The three-judge court held the Act unconstitutional and enjoined its enforcement stating:

"In `posting' an individual, the particular defendant is doing more than denying plaintiff

the ability to purchase alcoholic beverages within the city limits. In essence, defendant is giving

notice to the public that he has found the plaintiff's behavior to fall within one of the categories

enumerated in the statutes. It would be naive not to recognize that such `posting' or

characterization of an individual will expose him to public embarrassment and ridicule, and it is

our opinion that procedural due process requires that before one acting pursuant to State statute can make such a quasi-judicial determination, the individual involved must be given notice of the intent to post and an opportunity to present his side of the matter." 302 F. Supp., at 864. Where the State attaches "a badge of infamy" to the citizen, due process comes into play (*Wieman v. Updegraff*, 344 U. S. 183, 191). "[T]he right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society (*Anti-Fascist Committee v. McGrath*, 341 U. S. 123, 168)." The Supreme Court ruled in favor of the plaintiff finding that she was not afforded a chance to defend herself and that she may have been the victim of an official's caprice. The Supreme Court agreed with the District Court that the plaintiff's private interest was such that those requirements of procedural due process must be met.

73.

The facts of *Wisconsin* are similar to our case here. Without notice or hearing to the plaintiff, the TMB gave notice to the public, NYDOH and, SOAH that it found plaintiff's behavior to constitute a violation of the Medical Practice Act. The executive committee caused the information to be publicly disseminated pursuant to Tex. Occ. Code § 154.002 and, placed on plaintiff's physician profile pursuant to Tex. Occ. Code § 154.006. The executive committee's report to the NYDOH in March 2014, caused New York to open OPMC # CO 13- 07 -3474-A, against plaintiff's New York medical license for suspicion that he was unlawfully practicing medicine in Texas, [Exhibit J]. Also in 2014, the TMB reported its allegations against the National Practitioners Database.

74.

In our case, the government acted without probable cause making its conduct even more egregious than the State's in Wisconsin. There was no reasonable justification for alleging plaintiff violated the TMB's 2013 final order. Labeling plaintiff with criminal behavior in his profession is degrading. More degrading than being labeled an "excessive drinker" like the plaintiff in *Wisconsin*. The private interest here is far more significant than that protected in *Wisconsin*. Here, the liberty interest involves plaintiff's ability to freely practice medicine, not simply the liberty to buy alcohol. Nevertheless, this court should make the same determination reached in Wisconsin and find that plaintiff was not afforded a chance to defend himself before being defamed by the defendants acting under the color of law. Plaintiff's interest in being free to move about the country and work without being accused of criminal behavior in his profession is an interest worthy of procedural protection.

75.

The law presumes certain categories of statements are defamatory per se, including statements that (1) unambiguously charge a crime, dishonesty, fraud, rascality, or general depravity or (2) that are falsehoods that injure one in his office, business, profession, or occupation (*Main v Royall*, 348 S. W. 3d 318, 390 (Tex App. –Dallas 2011, no pet.). Here, the Executive Committee denied plaintiff procedural protections in order to unambiguously charge him with violating the Medical Practice Act and, report the charges to third parties. The Executive Committee abandoned its charges in July 2014. Since the TMB unlawfully labeled plaintiff a felon in his profession, the law presumes the Executive Committee has injured his reputation and he is entitled to relief.

76.

## VI. FRAUD

33

In the alternative to pleading acts to support his conspiracy claims, plaintiff asserts the defendants committed fraud under the common law to injure him. Plaintiff realleges and incorporates here, the foregoing paragraphs to establish causes of action for fraud under the common law against the Texas Medical Board's Executive Committee, Barbara Jordan and, Scott Freshour. On August 1, 2013, the Executive Committee sent plaintiff a letter in the mail whereby the committee stated the proceeding which served as the basis for the 2013 order was still active and, instructed plaintiff to wait three months for an update, [Exhibit C]. The proceeding which served as the basis for the Final Order was not active when the board drafted and sent plaintiff the letter in August. The Executive Committee itself entered the final order in June. A proper inquiry into the circumstances of the order would have shown the case was in fact, closed before "Exhibit C" was drafted and sent to the plaintiff. The members of the Executive Committee agreed to and did send plaintiff a letter with false information and false instructions. The text of the letter shows the board intended for plaintiff to believe the proceeding against him was still open, a final determination had not been made and, for plaintiff to wait for an update, [Exhibit C]. Plaintiff did not appeal the Final Order. As instructed, he waited for the board to update him on the case he believed was still open. In response to "Exhibit C", plaintiff a made motion to admit evidence into the case he believed was still "open", [Exhibit S]. "Exhibit C" caused plaintiff to be deprived of his right to appeal the TMB Legal No. 10-5774/11-0141, Final Order.

<div align="center">77.</div>

<div align="center">

## VII. RICO VIOLATIONS

### A. VIOLATION OF 18 U.S.C. § 1962(d)

</div>

In the alternative to pleading a claim for conspiracy under Sections § 1983 and

Section § 1985, plaintiff alleges the defendants formed an enterprise in violation of the Racketeer

Influenced and Corrupt Organizations Act, codified as Title IX of the Organized Crime Control

Act of 1970.

### 78.

### ENTERPRISE

Plaintiff incorporates here, the foregoing paragraphs to allege the existence and purpose

of "MHD Enterprise" among the Methodist Hospitals of Dallas, Ray Jackson, Oscar San Miguel

and the stated members of the Texas Medical Board. Jackson and San Miguel are both licensed

attorneys by the State Bar of Texas. They provide legal services for citizens of the United States.

The hospital provides medical services. The TMB's Executive Committee and, through its

associated committees, provide medical licensing services for the state of Texas. At all relevant

times, the members of the "MHD Enterprise" were "capable of holding a legal or beneficial

interest in property."

### 79.

Jackson, the hospital, and members of the TMB first came together for the common

purpose to litigate TMB Legal No. 10-5774, in 2010. Next, Jackson and the hospital were

associated to present Civil Action No. 3:11-CV-0017-B, to the federal court beginning in 2011.

Also in 2011, the hospital initiated a second complaint against the plaintiff, TMB Legal No. 11-

0141. The TMB executive committee members agreed to and did combine TMB Legal No. 10-

5774, and TMB Legal No, 11-0141 into one case. Jackson, the hospital, and the TMB were,

again, associated to litigate TMB Legal No. 10-5774/11-0141. Attorney for the board, Barbara

Jordan, agreed to and did litigate, TMB Legal No.10-5774/11-0141, on behalf of the board

beginning in 2012. San Miguel represented the plaintiff for TMB Legal No.10-5774/11-0141, from February to June 2013.

<center>80.</center>

In sum, all members of the enterprise were associated for the litigation of TMB Legal No.10-5774//11-0141. The board proceeding lasted from June 2010 to June 2013. The associations between the members of the enterprise were originally formed to litigate, in an objective and adversarial nature, the issue of whether plaintiff was wrongfully terminated from the hospital and, whether he violated Texas statutes regarding the unlawful practice of medicine in 2010. In 2014, the TMB's Executive Committee and its associated committees were associated to litigate, lawfully and in accordance with the Texas constitution, TMB Legal No.14-0096. The enterprise's association for the presentation of the first lawsuit to the Court and, trial of plaintiff's TMB cases was separate and apart from the pattern of racketeering. From 2010 to 2014, the enterprise had sufficient time to pursue its purpose.

<center>81.</center>

The MHD enterprise consisted of both consensual and hierarchical elements. The hospital and Jackson functioned together as a continuous decision-making unit from January 2011, to April 2012, submitting to the Court: a joint status report on February 10, 2011, [Exhibit C II: Page 73 of Plaintiff's Appendix], and, a joint motion to forego mediation on February 3, 2012, [Exhibit C II]. The motions allowed Civil Action No. 3:11-CV-0017-B, to proceed. The motions reflect a "meeting of the minds" between the hospital and Jackson. Jackson, the hospital, and the TMB's litigation department, also made consensual decisions and submitted similar motions to allow TMB Legal No. 10-5774/11-0141, to proceed before the TMB and SOAH. The TMB's

<center>36</center>

executive committee appointed Jordan to litigate TMB Legal No. 10-5774/11-0141, according to its disciplinary protocol.

<div align="center">82.</div>

The hospital provided affidavits to the TMB for the purpose of sanctioning the plaintiff for TMB Legal No.10-5774/11-0141. The TMB's executive committee members agreed to and did use the hospital's affidavits to enter a final order against the plaintiff in June 2013. In November 2013, the TMB's Executive Committee, the Disciplinary Process Review Committee and Litigation Department made a consensual agreement to initiate and litigate TMB Legal No.14-0096, against the plaintiff. Jordan was again, appointed to litigate the proceeding on behalf of the TMB.

<div align="center">83.</div>

<div align="center">

## PATTERN OF RACKETEERING
</div>

Plaintiff re-alleges and incorporates here, the foregoing paragraphs to establish the predicate acts committed by Ray Jackson, Oscar San Miguel and members of the Texas Medical Board to state a pattern of racketeering. It was foreseeable that the mail and wires would be used by the all of the defendants. The use of mail and wires is a normal course of business for the defendants and was a normal vehicle of communication between the defendants and plaintiff.

<div align="center">84.</div>

The predicate acts were related because: [a] all acts were directed at the plaintiff (similar victim); [b] all acts were committed by individuals associated to litigate TMB Legal proceedings involving the plaintiff (similar participants); [c] all acts were committed regarding legal proceedings where plaintiff was either the respondent or complainant; [d] all affected interstate commerce via the use of mail or wires to send transmissions to the plaintiff (similar methods of

<div align="center">37</div>

commission); [e] all employed the use of fraud either by misrepresentation or concealment; [f] all acts had the purpose of denying plaintiff his constitutional rights (i.e. right to fully litigate upon Civil Action Nos. 3:11-CV-0017-B and 3:14-CV-02958-B, and TMB Legal No. 10-5774/11-0141, all the rights or defenses he was entitled to assert; right to appeal the TMB June 2013 Final Order; right to be free to move about and practice one's profession without the unjustified label of infamy and; right to have a subpoena issue) and; [g] as a result of the predicate acts, plaintiff was deprived of his constitutional rights.

85.

Plaintiff alleges the predicate acts constitute a closed period of repeated activity. Here, the predicate acts began in February 2012, and continued until July 2014, lasting a substantial period of time of more than just a few weeks or months. Unlike the predicate acts in *Burzynski*, the predicate acts here were related to four separate proceedings: Civil Action Nos. 3:11-CV-0017-B and 3:14-CV-02958-B and; TMB Legal Nos. 10-5774/11-0141, and 14-0096.

86.

Additionally, the threat of future racketeering conduct exists because the members of the enterprise are again associated to litigate a proceeding where plaintiff is a party. The foregoing paragraphs demonstrate how a primary objective of the enterprise has been to conceal facts from the decision-makers for plaintiff's legal proceedings. The District Court for the Northern District of Texas Dallas Division was victimized by the "MHD" enterprise for Civil Action No. 3:11-CV-0017-B, when it based its decision on omitted and fabricated evidence. The SOAH was also deceived by the enterprise when it made the recommendation to sanction plaintiff for TMB Legal No. 10-5774/11-0141. Further, plaintiff is eligible to seek renewal of his Texas license permit.

The foregoing paragraphs demonstrate how the board members have no reservation about committing unlawful acts against him to ensure he does not freely practice his profession.

87.

Plaintiff re-alleges and incorporates here, the foregoing paragraphs under his Section 42 U.S.C. § 1983 and Section 42 U.S.C. § 1985 Civil Conspiracy claims to establish the agreement among the members of the enterprise and, the injury he suffered as a result of their acts.

88.

## B. VIOLATIONS OF 18 U.S.C. § 1962(a)

Plaintiff re-alleges and incorporates here, the foregoing paragraphs to establish the necessary elements to state claims for violations of §1962(a) against the Executive Committee, Scott Freshour, Jackson and, San Miguel. Each of the stated defendants invested income derived from the pattern of racketeering activity. Jackson and San Miguel did so in the form of a retainer from the plaintiff, and Freshour, in the form of a subpoena request fee. Payment made by the plaintiff allowed Jackson and San Miguel to continue representing him during the time when the enterprise pursued its purpose. Monies paid by plaintiff to the board's litigation department were used to deny plaintiff's request.

89.

## C. VIOLATIONS OF 18 U.S.C. § 1962(b)

Plaintiff re-alleges and incorporates here, the foregoing paragraphs to establish the necessary elements to state claims for violations of §1962(b) against the Executive Committee, Barbara Jordan, Scott Freshour, San Miguel and the Methodist Hospitals of Dallas. Each of the stated defendants acquired or maintained control of the MHD Enterprise through a pattern of racketeering activity. San Miguel acquired control of the enterprise in February 2013 after

speaking to Jackson on the phone. San Miguel proceeded to commit the acts outlined above. The

Executive Committee, Jordan and, Freshour acquired control of the enterprise beginning in

August 2013. After the board acquired the enterprise, its members proceeded to exert control

over it by committing the stated predicate acts. The hospital maintained control over the

enterprise by submitting its knowingly false affidavits to the board for TMB Legal No. 10-

5774/11-0141. The hospital was unjustly enriched by the subsequent illegal conduct of the TMB

that served to: prevent plaintiff from asserting his rights for TMB Legal No. 10-5774/11-0141,

and TMB Legal No. 14-0096; prevent plaintiff from challenging the hospital's allegations and;

prevent plaintiff from challenging the false narrative set against him.

90.

### D. VIOLATIONS OF 18 U.S.C. § 1962(c)

Plaintiff re-alleges and incorporates here, the foregoing paragraphs to establish the

necessary elements to state claims for violations of §1962(c) against the Executive Committee,

Barbara Jordan, Scott Freshour, Jackson and, San Miguel. Each of the stated defendants

participated in the affairs of the MHD Enterprise by committing predicate acts.

91.

### VIII. PERMANENT INJUNCTION

Plaintiff is eligible to seek license renewal in the state of Texas. Plaintiff's family lives in

Texas and he desires to renew his permit. Plaintiff has not applied for renewal simply

because the stated defendants, with the exception of one, are current members of the board. The

unambiguous evidence in plaintiff's complaint demonstrates the board members' bias against

him. Plaintiff faces harm in not being free to obtain the permit as long as the stated members of

the board act through the Executive Committee. Texas is being deprived of having a perfectly

capable physician, and former recipient of the Arnold P. Gold Foundation Humanism and Excellence in Teaching Award, provide medical care for its citizens.

92.

For these reasons, plaintiff requests the Court enter a permanent injunction against the stated members of board prohibiting them from performing all executive functions related to applications for licensure including: reviewing; approving or; denying applications. This will ensure plaintiff's renewal application is reviewed in an unbiased manner. Plaintiff also requests that any and all information published by the board regarding: TMB Legal No. 10-5774/11-0141; TMB Legal No. 14-0096; and SOAH DOCKET # 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, be removed and retracted by the defendants as it continues to create an injustice by affecting plaintiff's ability to obtain a license permit in all US states. The information is depriving citizens across the United States, not just Texas, from receiving medical care a competent physician.

93.

It is always in the public's interest to deter against unlawful activity and to protect against the violation of a party's constitutional rights.  The public has an interest in states fulfilling their fiduciary duty to provide for fair and honest procedures and, an interest in having the employees of state agencies follow procedures designed to prohibit the erroneous deprivation of rights. The defendants here failed to adhere to such procedures and, failed to abide by: the criminal code of the federal government of the United States; Ku Klux Klan Act and; the Texas Constitution.  The defendants' acts and omissions have created an  injustice that can only be redressed by preventing such acts to occur again in the future.

94.

In order to: protect the public's interest in having fair and honest state procedures; protect the public's interest in deterring unlawful activity; protect the public's interest against the violation of Texas physicians' constitutional rights and; to protect its interest in having otherwise qualified physicians provide medical care for the public, plaintiff requests that the stated members of the Texas Medical Board be prohibited from performing any and all litigation functions regarding the discipline of Texas medical licensees including: opening investigations on a complaint; preparing panel reports; holding informal settlement conferences; preparing and reporting *formal complaints* to the Texas State Office of Administrative Hearings and; publishing disciplinary information on the board's website. It is clear that the defendants' predilection for illegal and criminal activity creates a substantial risk that perfectly qualified physicians will have their constitutional rights violated and be denied the ability to care for the Texas public. Due to their violation of §1962 (a), plaintiff also requests the defendant members of the board be prohibited from performing all executive functions related to the board's financial affairs including: collection of monies from Texas medical licensees and; assessing fees for violations of the Texas Medical Practice Act.

95.

Plaintiff has provided the Court with undisputable evidence of the Texas Medical Board's Executive Committee, Disciplinary Process Review Committee, Barbara Jordan, and Scott Freshour's willful and intentional acts to deprive plaintiff of his rights protected by the Constitution of the United States. Based on the evidence presented to the Court and, in order to protect the public at large from the unlawful and criminal practice of law, plaintiff requests that lawyers: Timothy Webb; Barbara Jordan and; Scott Freshour be permanently disbarred from the practice of law for their repeated conduct in violation of the Ku Klux Klan Act. Plaintiff also

requests Stanley S. Wang MD, JD also be disbarred for a period 3 years for his participation in depriving plaintiff of his constitutional rights.

<div align="center">96.</div>

The balance of harms weighs in favor of the plaintiff. There is no threatened injury for the defendants in being prohibited from breaking the law. The Texas Medical Board does not face any harm in the stated defendants not being able to be involved in the license application process, the litigation of the board's disciplinary proceedings, or managing the board's finances. These duties can be appointed to other members of the board as plaintiff attempts to renew his permit. The removal of the board's published information about the plaintiff has no effect on the board members' ability to earn a living. Allowing plaintiff to freely obtain a license permit in Texas and, other US states by enforcing the proposed injunctions will benefit the public who receive his medical care.

<div align="center">97.</div>

## IX. DAMAGES

Plaintiff sustained the following damages as a result of the actions and/or omissions by the defendants described herein:

a. Actual damages resulting from the defendants' denial of plaintiff's right to a fair trial for Civil Action Nos. 3:11-CV-0017-B, and 3:14-CV-02958-B, based on the hospital's breach of contract and intentional interference with plaintiff's prospective contract to train in Sports Medicine and Pain Intervention at JPS.

b. All reasonable and necessary Attorney's fees incurred by or on behalf of the Plaintiff;

c. All reasonable and necessary costs incurred in pursuit of this suit;

d. Damage to reputation in the amount of $10,000,000 for each publication regarding TMB

Legal No. 10-5774/11-0141 and, TMB Legal No. 14-0096;

e. Emotional pain in the amount of $7,000,000;

f. Inconvenience;

g. Loss of enjoyment of life;

h. Mental anguish in the past;

i. Mental anguish in the future;

j. Loss of earnings in the past;

k. Loss of employment opportunities;

l. Loss of earning capacity which will, in all probability, be incurred in the future in the amount

of $ 10,000,000;

m. Damages in the amount of $5,000,000 for each civil rights violation,

n. Treble Damages,

o. Punitive damages at the highest rate allowed by law, and

p. Prejudgment and post-judgment interest at the highest rate allowed by law.

<div align="center">98.</div>

## X. PRAYER

**WHEREFORE,** Plaintiff, Jason Simmons, respectfully prays the Defendants be cited to

appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the

Plaintiff against Defendants jointly and severally for damages in an amount within the

jurisdictional limits of the Court; exemplary damages, together with interest as allowed by law;

costs of court; and such other and further relief to which Plaintiff may be entitled at law or in

equity. Prays that the permanent injunction be granted to protect himself and the public at large.

Plaintiff hereby demands trial by jury.


     I , the undersigned declare under the penalty of perjury that: the stated facts; the referenced "Exhibits" and; affidavits on file, in support of Plaintiff's Second Amended Original Complaint are true and correct, are within my personal knowledge and, I am competent to testify.

Pro Se Plaintiff-Jason Simmons

417 Myrtle Ave

BOX #2

Brooklyn, NY 11205

## XI. CERTIFICATE OF SERVICE

     On this 24th day of November 2017, I hereby certify that I sent a copy of the foregoing document to the Clerk of the United States District Court, Western District of Texas, Austin Division, and to the defendants at the Texas Medical board via their counsel Assistant Attorney General Benjamin Walton.

**BY CERTIFIED MAIL TO**:
CLERKS OFFICE
US District Clerk's Office
501 West Fifth Street, Suite 1100
Austin, TX 78701

Pro Se Plaintiff-Jason Simmons
417 Myrtle Ave
BOX #2
Brooklyn, NY 11205

45

TABLE OF CONTENTS

I. PARTIES AND SERVICE........................................................................page 2
II. JURISDICTION.................................................................................page 2
III. FACTS........................................................................................page 2
IV. DEFENDANTS' ACTS......................................................................page 6
Methodist Hospitals of Dallas.................................................................page 6
*Refusal of GMEC Meeting*.....................................................................page 7
*Non - Disclosure of Pages*.....................................................................page 7
*Right to Disclosure "Combativeness" Allegation*........................................page 8
*Right to Disclosure - Continuity Clinic*......................................................page 8
Ray Jackson.......................................................................................page 8
*Concealment of Affidavits*.....................................................................page 9
*"Entire File"*....................................................................................page 11
Oscar San Miguel................................................................................page 12
*Concealment of Jackson's Conduct* ........................................................page 12
Texas Medical Board.............................................................................page 14
V. SECTION § 1983 VIOLATIONS...........................................................page 22
A. Section 42 U.S.C. § 1983 and Section 42 U.S.C. § 1985 Civil
Conspiracy........................................................................................page 22
AGREEMENT....................................................................................page 23
DAMAGES.......................................................................................page 27
B. 42 U.S.C. § 1983 Action...................................................................page 29
VI. FRAUD.......................................................................................page 33
VII. RICO VIOLATIONS.......................................................................page 34
A. VIOLATION OF 18 U.S.C. § 1962(d)....................................................page 34
ENTERPRISE.....................................................................................page 35
PATTERN OF RACKETEERING..............................................................page 37
B. VIOLATIONS OF 18 U.S.C. § 1962(a).................................................page 39
C. VIOLATIONS OF 18 U.S.C. § 1962(b)..................................................page 39
D. VIOLATIONS OF 18 U.S.C. § 1962(c)..................................................page 40
VIII. PERMANENT INJUNCTION............................................................page 40
IX. DAMAGES...................................................................................page 43
X. PRAYER.......................................................................................page 44
XI. CERTIFICATE OF SERVICE..............................................................page 45

STATUTES

18 U.S.C. § 1343...............................................................................page 22
18 U.S.C. § 1962(a).....................................................................page 25, 27, 39, 42
18 U.S.C. § 1962(b).........................................................................page 25, 27, 39
18 U.S.C. § 1962(c).........................................................................page 25, 27, 40
18 U.S.C. § 1962(d)...........................................................................page 34
Racketeer Influenced and Corrupt Organizations Act, codified as Title IX of the Organized
Crime Control Act of 1970...................................................................page 2, 35
Sections § 1983...................................................page 2, 22, 29, 35, 39, 41, 42
Section § 1985.................................................................................page 22, 35, 39

Title VII of the Civil Rights Act of
1964...................................................................................page 2
Fifth Amendment...........................................................page 21, 30
Fourteenth Amendment...................................................page 21, 30

## STATE STATUTES

Texas Occupations Code Title 3. Health Professions Subtitle B. 9 Physicians Chapter
151..................................................page 15
Tex. Occ. Code § 153.005. (a)....................................................page 15
Tex. Occ. Code § 156.001...........................................................................page 14
Tex. Occ. Code § 156.005...........................................................................page 16, 20
Tex. Occ. Code § 164.001………….…………….....………...................................page 15
Tex. Occ. Code § 164.0025...........................................................................page 18
Tex. Occ. Code § 164.0025 (b)........................................................................page 18
Tex. Occ. Code § 164.003. (b) (3).......................................................page 21, 22, 30
Tex. Occ. Code § 164.004.....................................................................page 21, 22, 30
Tex. Occ. Code § Sec. 164.005....................................................................page 17, 30
Tex. Occ. Code § 164.009.....................................................................page 16, 21, 29

Texas Penal Code - PENAL § 37.11. Impersonating Public Servant...............................page 22

## OTHER AUTHORITIES
ACGME policy IV.C1.b.........................................................................page 7, 8

## CASES

*Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1026 (9th Cir.
2007).............................................................................................page 30
*Anti-Fascist Committee v. McGrath*, 341 U. S. 123, 168).................................page 32
*Board of Regents v. Roth*, 408 U.S. at 572, 92 S.Ct. at 2706, 33 L.Ed.2d at 557)..............page 31
*Cadle Co. v. Shultz*.....................................................................................page 12
*Greene v. McElroy*, 360 U.S. 474, 492 (1959)..................................................page 30
*Main v Royall*, 348 S. W. 3d 318, 390 (Tex App. –Dallas 2011, no pet.)............................page 33
*Siegert v. Gilley*, 500 U.S. 226, 234, 111 S.Ct. 1789, 1794, 114 L.Ed.2d 277 (1991).........page 30
*Wieman v. Updegraff*, 344 U. S. 183, 191).........................................................page 32
*Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515
(1971)..................................................................................................page 30, 31, 33

## TABLE OF EXHIBITS
EXHIBIT B: BARBARA JORDAN EMAIL - ISC……………………………………………19
EXHIBIT C: TMB LETTER - ACTIVE INVESTIGATION………..5, 15, 16, 17, 18, 19, 21, 34
EXHIBIT E: BARBARA JORDAN LETTER - ISC PROCEEDING…………………………..…19
EXHIBIT F: PLAINTIFF'S SOAH APPEARANCE……………....……………………….19, 31
EXHIBIT G: TMB DENIAL OF PLAINTFF'S REQUEST FOR SUBPOENA…………….6, 21

EXHIBIT I: EMAIL TO JORDAN RE MOTIONS FOR: NEW HEARING; PRODUCTION; ADMIT NEW EVIDENCE...................................................................................................19
EXHIBIT J: NEW YORK STATE DEPARTMENT OF HEALTH OPMC #CO-13-07- 3474-A.....................................................................................................................31, 32
EXHIBIT K: METHODIST HOSPITALS OF DALLAS SUSPENSION LETTER............7, 8
EXHIBIT O: METHODIST HOSPITALS OF DALLAS' AFFIDAVITS FOR TMB FINAL ORDER...........................................................................................................3, 7, 8, 9
EXHIBIT R: TMB'S PHYSICIAN PROFILE FOR PLAINTIFF...................................17
EXHIBIT S: PLAINTIFF'S RELIANCE ON 8/1/13 LETTER...................................................................................................16, 34
EXHIBIT T: TMB COMPLAINT TO SOAH 4/29/14................................................17
EXHIBIT U: JORDAN'S JUNE 2014 EMAILS TO PLAINTIFF..............................6, 20
EXHIBIT V: JORDAN'S EMAILS RE: SUBPOENA REQUEST BY PLAINTIFF.............20

.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **JASON SIMMONS** | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 1:17-CV-794-SS** |
| | § | |
| **ZEITLER, et al., Defendants**. | § | |

## PLAINTIFF JASON SIMMONS' SECOND AMENDED ORIGINAL COMPLAINT

1.

**NOW COMES**, Jason Simmons, "Plaintiff," respectfully files this, a Second Amended

Original Complaint against the Texas Medical Board's: (1) EXECUTIVE COMMITTEE – Irvin

E. Zeitler, Jr., D.O., Board President: Michael Arambula, M.D., Vice-President:Paulette

Southard, Secretary/Treasurer; Margaret McNeese, M.D.; Timothy Webb, J.D.;

(2) DISCIPLINARY PROCESS REVIEW COMMITTEE - Margaret McNeese, M.D. – Chair;

Julie Attebury; Stanley S. Wang, M.D.; J.D. George Willeford III, M.D.; Sherif Z. Zaafran, M.D;

(3) Texas Medical Board Attorney, Barbara Jordan J.D. ("Jordan") and; (4) Scott Freshour J. D.

General Counsel ("Freshour"). Plaintiff is suing the named defendants in

their individual capacities. Irvin E. Zeitler, Jr., D.O., Board President: Michael Arambula, M.D.,

Vice-President: Paulette Southard, Secretary/Treasurer; Margaret McNeese, M.D.; Timothy

Webb, J.D are hereinafter referred to collectively as the "EXECUTIVE COMMITTEE".

Margaret McNeese, M.D. – Chair; Julie Attebury; Stanley S. Wang, M.D. J.D. George Willeford

III, M.D.; Sherif Z. Zaafran, M.D are hereinafter referred to collectively as the

"DISCIPLINARY PROCESS REVIEW COMMITTEE".

2.

## I. PARTIES AND SERVICE

Plaintiff, Jason Simmons, is a citizen of the United States of America and of the State of New

York. The Texas Medical Board's "Executive Committee", "Disciplinary Process Review

Committee", General Counsel, Scott Freshour J. D. and, Attorney for the Texas Medical Board,

Barbara Jordan may be served at their place of business at: 333 Guadalupe St., #610 Hobby

Building, Austin, TX 78701. Irvin E. Zeitler, Jr., D.O. may be served at his place of business at:

120 E. Harris Ave, PO BOX 1879, San Angelo, TX 76902.

3.

## II. JURISDICTION

Plaintiff's conspiracy claim arises under Section 1983 of the Civil Rights Act of 1871,

also known as the Ku Klux Klan Act and, in the alternative, the Racketeer Influenced and

Corrupt Organizations Act, codified as Title IX of the Organized Crime Control Act of 1970.

Plaintiff's claims of constitutional violations against the board employees also arise

under Section 1983.

4.

## III. FACTS

Plaintiff is an African-American and a member of a protected class. He was employed as

an internal medicine resident for the Methodist Hospitals of Dallas, ("MHD/hospital"),

from June 2007 to May 2010. The hospital held a disciplinary hearing for the plaintiff before its

Graduate Medical Education Committee, ("GMEC/ECGME"), on May 20, 2010. Plaintiff made

an audio recording of the hearing, [Exhibit N: Pages 31- 44 of Plaintiff's Appendix]. The

hospital suspended plaintiff's privileges following the hearing.

5.

2

The hospital reported its findings against the plaintiff to the Texas Medical Board ("TMB/board"), to initiate TMB Legal No. 10-5774, against him in June 2010. Plaintiff was fired from the hospital after the CEO upheld the GMEC decision in July 2010.

6.

Plaintiff hired Attorney, Ray Jackson ("Jackson"), to file suit against the hospital and represent him before the TMB. Jackson admits to being aware of plaintiff's audio recording of the disciplinary hearing. Plaintiff gave Jackson a copy of the November 2009 letter he wrote to the hospital's Designated Institutional Official, ("DIO"), complaining of individual harassment, [Exhibit X: Pages 62-63 of Plaintiff's Appendix].

7.

The Texas Workforce Commission ("TWC"), granted plaintiff unemployment benefits in the fall of 2010, despite the hospital's appeal, TWC Appeal No. 1380840-1-3.The TWC found plaintiff had been wrongfully terminated by the hospital.

8.

Jackson filed suit against the hospital, on plaintiff's behalf, on January 4, 2011, Civil Action No. 3:11-CV-0017-B, ("first lawsuit"). Jackson did not request discovery from the hospital, did not depose plaintiff's witnesses nor, admit plaintiff's evidence for the cause. On February 3, 2012, the hospital and Jackson made a joint agreement to forego mediation for Civil Action No. 3:11-CV-0017-B, [Exhibit C II: Page 74 of Plaintiff's Appendix]. Plaintiff had no knowledge of the agreement. On February 18, 2012, Jackson emailed the plaintiff informing him the hospital filed a motion for summary judgment, [Exhibit W: Page 61 of Plaintiff's Appendix]. Jackson did not send plaintiff a copy of the hospital's affidavits filed with the motion, [Exhibit O: Pages: 45 - 48 of Plaintiff's Appendix]. On March 2, 2012, Jackson submitted an affidavit to

3

the court in response to the hospital's motion for judgment, [Exhibit D II: Pages 75-77 of Plaintiff's Appendix]. Plaintiff did not produce or sign the affidavit. The court granted the hospital's motion for judgment for Civil Action No. 3:11-CV-0017-B, on April 26, 2012.

9.

The TMB did not give a final disposition for TMB Legal No. 10-5774. There is no record on plaintiff's physician profile for the start and end date for TMB Legal No. 10-5774. In 2011, the hospital initiated a second complaint against the plaintiff, TMB Legal No. 11-0141. Plaintiff did not work for the hospital after the first TMB case was initiated. TMB Legal No. 10- 5774 and TMB Legal No. 11-0141, were merged into one case. Attorney, Barbara Jordan ("Jordan"), represented the board for TMB Legal No. 10-5774/11-0141.

10.

Jackson withdrew from representing the plaintiff for TMB Legal No. 10-5774/11-0141, in October 2012. Plaintiff hired Attorney, Oscar San Miguel ("San Miguel") to represent him for the board proceeding in February, 2013. San Miguel spoke with Jackson on the phone about TMB Legal No. 10-5774/11-0141, on February 20, 2013, [Exhibit B II: Pages 71-72 of Plaintiff's Appendix]. Plaintiff asked San Miguel what Jackson did on plaintiff's behalf for proceeding. San Miguel told plaintiff he did not know what Jackson did. San Miguel did not proceed to investigate what Jackson did on plaintiff's behalf for TMB Legal No. 10-5774/11-0141. San Miguel withdrew from representing the plaintiff before the TMB in June 2013.

11.

The TMB entered a Final Order for TMB Legal No. 10-5774/11-0141, against the plaintiff in June 2013. On August 1, 2013, the Executive Committee sent plaintiff a letter stating

4

the case against him was still "active", [Exhibit C: Page 13 of Plaintiff's Appendix]. The case

was not active. The final order for TMB Legal No. 10-5774/11-0141, was entered in June 2013.

12.

On or about November 1, 2013, the Executive Committee agreed to and did, initiate a

new proceeding, TMB Legal No. 14-0096, against the plaintiff. TMB Legal No. 14-0096, was

started because plaintiff allegedly violated the final order from June 2013. The board did not

send plaintiff a letter in the mail, email him or, serve him by a process server to inform him that

TMB Legal No. 14-0096, had been initiated. There is no start date given for TMB Legal No. 14-

0096, on plaintiff's physician profile. Jordan represented the board for TMB Legal No. 14-0096.

13.

Jordan sent plaintiff a letter and, an email to inform him about an informal settlement

conference ("ISC") for TMB Legal No. 14-0096, in December 2013. This was the first

time plaintiff became aware of the new proceeding. The board cancelled the conference. Plaintiff

attempted to reschedule a conference with the board for TMB Legal No. 14-0096, in March

2014. The board did not respond to plaintiff's request. A hearing was never held between the

plaintiff and the board for TMB Legal No. 14-0096.

14.

The Executive Committee notified the New York State Department of Health

("NYDOH"), of its findings against the plaintiff in March 2014. This caused NYDOH to

open NYOPMC #CO-13-07-3474-A, against plaintiff's New York medical license. The board

also reported its findings to the Texas State Office of Administrative Hearings ("SOAH"),

to initiate SOAH DOCKET # 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, on April 29, 2014.

15.

5

15.

Jordan emailed plaintiff on June 13, 2014, to inform him that the SOAH hearing was moot

because plaintiff did not pay for license renewal, [Exhibit U: Page 57-59 of Plaintiffs Appendix].

Jordan emailed plaintiff on July 3, 2014, to inform him to make his request for subpoena to the

TMB's General Counsel Department. On July 9, 2013, Jordan emailed plaintiff to inform him

that payment for the subpoena request goes to the same address, [Exhibit V: Page 60 of

Plaintiff's Appendix]. Plaintiff paid for the subpoena request. On July 14, 2014, Scott Freshour

sent plaintiff a letter in the mail stating the TMB denied his request for subpoena, [Exhibit

G: Page 18 of Plaintiff's Appendix].

16.

Later that month, plaintiff and Jordan had a hearing before the SOAH's Administrative

Law Judge ("ALJ"). During the hearing, Jordan did not present any evidence to prove

plaintiff violated the June 2013 Final Order. Instead, Jordan moved to dismiss TMB Legal No.

14-0096/SOAH DOCKET # 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. NYOPMC #CO-13-07-3474-A, TMB Legal No. 14-

0096 and, SOAH DOCKET # 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, all ended without sanctions being imposed against

the plaintiff. The Executive Committee published information about the TMB proceedings on the

TMB website for the community and potential employers to access. The Executive Committee

also published the information to the National Practitioners Database.

17.

## IV. DEFENDANTS' ACTS

**Methodist Hospitals of Dallas**

Plaintiff, an African-American, had completed 35 out of 36 months of residency training

before being fired in 2010. He was the only medical resident in his class to be fired. The hospital

6

discriminated against him as a member of a protected class. In February 2012, the hospital filed affidavits with the Court for Civil Action No. 3:11-CV-0017-B, to support its motion for summary judgment. The motion was granted by the Court in April 2012. In 2013, the hospital filed the same affidavits with the medical board to obtain sanctions against the plaintiff for TMB Legal No. 10-5774/11-0141. The affidavits accused plaintiff of: 1) refusing to meet with the GMEC; 2) failing to return pages; 3) becoming combative with staff on May 14, 2010, and; 4) poor performance in clinic, [Exhibit O]. The TMB found the allegations to be true in support of its final order, [Exhibit A]. The information contained in the hospital's affidavits was fabricated and used as pretext for plaintiff's firing:

On May 20, 2010, the hospital provided plaintiff with a suspension letter stating the reasons why he was being subjected to a disciplinary hearing, [Exhibit K: Pages 24 -25 of Plaintiff's Appendix]. ACGME policy IV.C1.b. mandated the hospital provide plaintiff due process during the hearing, [Exhibit P: Page 49 of Plaintiff's Appendix].

*Refusal of GMEC Meeting*

The suspension letter accused plaintiff of refusing to meet with the GMEC. On May 11, 2010, the DIO wrote an email to Dr. Hunter informing her that plaintiff requested a meeting with the Executive Committee, [Exhibit Q: Page 50 of Plaintiff's Appendix]. The documentary evidence shows that plaintiff did not refuse to meet with the GMEC. Plaintiff requested the meeting himself prior to May 11, 2010, and, met with the committee on May 20, 2010. The hospital's declaration that plaintiff refused to meet with the GMEC is false.

*Non - Disclosure of Pages*

The allegation that plaintiff ignored pages also served as a reason to discipline him, [Exhibit

K]. The hospital did not disclose the pager records or, the pages plaintiff allegedly ignored

during the hearing, [Exhibit N], in violation of ACGME policy IV.C1.b.

*Right to Disclosure "Combativeness" Allegation*

In her affidavit submitted to the Court and TMB, Dr. Hunter swore the plaintiff became

combative on May 14, 2010, [Exhibit O]. During the hearing, the hospital did not disclose its

allegation that plaintiff became combative, [Exhibit N]. The allegation was also not stated in the

suspension letter, [Exhibit K]. Plaintiff was denied the opportunity to defend against the

allegation.

*Right to Disclosure - Continuity Clinic*

In her affidavit submitted to the Court and TMB, Dr. Isitri Modak swore she could not pass the

plaintiff for "Continuity Clinic" due to declining clinical performance and unprofessional

conduct, [Exhibit O]. The hospital did not disclose the allegation that plaintiff failed his clinic

rotation during the hearing, [Exhibit N]. The allegation was also not stated in the suspension

letter. Plaintiff never had the opportunity to respond to the charge. The hospital fired the plaintiff

on grounds not stated in his notice and, on ground not discussed during the GMEC meeting, in

violation of ACGME policy IV.C1b. The documentary evidence shows the material information

provided by the hospital, on which the board based their findings of fact, was fabricated. The

declarations were not supported by objective evidence. Plaintiff alleges the affidavits were

intentionally fabricated to supply the board with the necessary facts to obtain sanctions against

him.

18.

**Ray Jackson**

8

*Concealment of Affidavits*

On February 18, 2012, Jackson sent the plaintiff an email informing him of the hospital's motion for summary judgment for Civil Action No. 3:11-CV-0017-B, [Exhibit W]. The email did not contain the hospital's affidavits, [Exhibit O]. Only the hospital's brief in support of its motion for summary judgment was included in the email labeled: *simmons 17716278265.pdf.*, [E II: Page 78 of Plaintiff's Appendix]. Jackson had the affidavits in his possession as they were given to him directly while serving as the plaintiff's lawyer for the cause. The affidavits were material in that they were submitted by the hospital in support of its motion for summary judgment.

19.

Jackson knew the plaintiff was ignorant of the affidavits because Jackson was acting as the plaintiff's lawyer and, the material information was given directly to Jackson. Jackson knew the plaintiff did not have equal opportunity to discover the facts because the plaintiff was not communicating with the hospital or, the federal court directly. Plaintiff resided in New York in February 2012, and, was dependent on Jackson to reasonably represent him.

20.

Jackson's intent to conceal the affidavits is evidenced by his conduct in writing a confusing email: "Methodist has filed a Motion for Summary Judgment trying to gt our case thrown out. Please look at this a email a response to their allegations…" and, emailing the plaintiff at the "last minute" on a Saturday, 21 days after the motion for summary judgment was made, [Exhibit W]. Jackson provided the plaintiff limited information and, a limited amount of time to prepare a proper response.

21.

The content of the affidavits would have suggested to the plaintiff that Jackson did not request discovery from the hospital, did not depose plaintiff's witnesses nor, admit the plaintiff's evidence. By withholding the affidavits, Jackson concealed these facts during the litigation. Since plaintiff relied only on the information he received from Jackson, plaintiff could not prepare an appropriate response to the hospital's motion, for example, demand that Jackson admit, [Exhibit X], to prove the DIO's declaration that plaintiff never made an individual complaint of harassment was false or, demand that Jackson depose plaintiff's witnesses to corroborate the DIO's description of the work environment.

22.

In his response to Jackson sent on Monday, February 20, 2012, plaintiff stated: "*I really cannot think of anything to add other than what I have already said or provided as evidence. My allegations needed to be corroborated with witness testimony...Regarding the Rheumatology issue, I have provided evidence of my efforts to do the rotation summer of 2009. I have provided copies of the schedule that did have me scheduled to Rheumatology in April 2010. ...I can't read the last few pages of the motion*, [Exhibit Y: Pages 64 -65 of Plaintiff's Appendix]." Plaintiff's response shows he wanted Jackson to focus on his evidence and witness testimony.

23.

Judgment was entered for the hospital for Civil Action No. 3:11-CV-0017-B, as Judge Boyle determined the plaintiff had no evidence. Jackson's email served to lessen the suspect appearance of his malpractice and the suspect appearance of the conspiracy. It also served to deter plaintiff from demanding his evidence be submitted before the lawsuit was dismissed. Plaintiff's evidence proving the hospital's pre-textual reasons for firing him was effectively "postponed". It was foreseeable that the mail and wires would be used by Jackson, as the use of

mail and wires is a normal course of business for the defendant and was a normal vehicle of communication between the plaintiff and Jackson.

<div align="center">24.</div>

<div align="center">*"Entire File"*</div>

In the summer of 2013, plaintiff requested Jackson send him his complete file from Civil Action No. 3:11-CV-0017-B. After repeated requests and, after plaintiff informed Jackson that pieces of evidence were missing from the file, Jackson stated to the plaintiff on August 6, 2013, that he sent the plaintiff his "entire file", [Exhibit A II:Pages 69-70 of Plaintiff's Appendix].

<div align="center">25.</div>

The file was not complete. Plaintiff's vacation contract between the plaintiff and hospital; plaintiff's November 2009 letter to the DIO complaining of harassment, [Exhibit X]; the attorney-client contract; record of the alleged deposition Jackson took for the first lawsuit; the affidavit the plaintiff allegedly drafted, then signed before Cristal Cienfuegos on February 23, 2012, [Exhibit D II]; were all missing from the "entire file".

<div align="center">26.</div>

Plaintiff informed Jackson that information was missing from the file and, invited Jackson to resend the complete file. Jackson did not comply with the request. Of note, [Exhibit X], contains Jackson's law firm information at the top indicating that it was in his possession in October 2010. Jackson was aware of the document's existence but did not include it in the August 6, 2013, email.

<div align="center">27.</div>

<div align="center">11</div>

Jackson intended for the plaintiff to believe that his file was complete and that plaintiff must now pursue claims against the hospital with what he had. Importantly, Jackson wanted to conceal evidence of his illegal conduct, (i.e. forged affidavit and, motion to forego mediation).

28.

Plaintiff relied on Jackson's email by filing a second cause, Civil Action No. 3:14-CV-02958-B, against the hospital without knowledge of the forged affidavit and without knowledge of Jackson's agreement to forego mediation. Plaintiff did not make a Saving Clause or, Extrinsic Fraud claim during proceedings for the second action. Plaintiff's inaction in making claims of fraud upon the court and extrinsic fraud for Civil Action No. 3:14-CV-02958-B, shows Jackson's email effectively postponed plaintiff raising these defenses. According to *Cadle Co. v. Shultz*, Jackson's email was in execution of a fraudulent scheme.

29.

Due to Jackson's withholding the "entire file", plaintiff was prevented from providing facts to the Court for Civil Action No. 3:14-CV-02958-B, to show the judgment from the "first lawsuit" should be set aside or, the statute of limitations should be waived. The hospital successfully argued plaintiff's breach of contract and IIWPC claims stated here were time barred.

30.

**Oscar San Miguel**

## *Concealment of Jackson's Conduct*

On February 20, 2013, San Miguel spoke with Jackson on the phone about TMB Legal No. 10-5774/11-0141. Plaintiff asked San Miguel, specifically, if Jackson requested production of the medical records from the hospital for TMB Legal No. 10-5774/11-0141, [Exhibit B II: Pages 71-72 of Plaintiff's Appendix]. San Miguel claimed he had "no idea" what Jackson did about the

medical records, [Exhibit B II]. This is untrue. The medical records related to San Miguel's representation of the plaintiff. He had the responsibility to provide plaintiff with the information from his discussion with Jackson. Even if San Miguel was truly ignorant of Jackson's efforts, San Miguel had the duty to obtain the requested information as it related to his representation of the plaintiff. San Miguel was not thorough in his study of the facts proposed by the plaintiff. Plaintiff stressed the importance of the medical records issue to San Miguel, but, San Miguel did not seek to acquire the information. Instead, San Miguel emailed the plaintiff saying he "had no idea". San Miguel's statement about the records and, his refusal to act on plaintiff's request were done to deter plaintiff from making further inquiries about the medical records and to conceal the existence of the conspiracy.

31.

San Miguel knew plaintiff was ignorant of the true status of the medical records. The content of plaintiff's email, [Exhibit B II], reflected plaintiff's desire to obtain the information. San Miguel knew Jackson did not provide the information to the plaintiff evident in the plaintiff's need to pose the question. Additionally, the plaintiff resided in New York and hired San Miguel to act as his agent before the TMB. The plaintiff was not communicating directly with the TMB and, relied on San Miguel to provide the information.

32.

San Miguel told the plaintiff he had "no idea" about the medical records and Jackson; the medical record issue was "secondary" and; that time was "so short" to file a motion for a rehearing, [Exhibit B II]. San Miguel's statements were in spite of the fact that information regarding Jackson's ineffective counsel could have served as justification for a rehearing in

itself. San Miguel's direct statements were intended to deter plaintiff from asking further

questions about the medical records and ineffective counsel he received from Jackson.

33.

Plaintiff remained ignorant of the status of the medical records, ignorant of Jackson's

deliberate ineffective counsel and, ignorant of the fraudulent scheme against him.

Plaintiff allowed San Miguel to continue representing him. Plaintiff responded to San Miguel's

statement believing time was "so" short. Ultimately, the TMB's 2013 Final Order was entered

without the medical records being obtained by San Miguel as he filed other motions. Plaintiff

was unable to prove to the board that he did not practice medicine in a way that created a risk to

the public and, that the hospitals allegation that he wrote unauthorized orders was false.

34.

Plaintiff's professional reputation has been damaged by the Board's public reprimand,

plaintiff has been defamed to other medical agencies and, plaintiff has been limited in

his licensing and, job opportunities as a result. It was foreseeable that the mail and wires would

be used by San Miguel. The use of mail and wires is a normal course of business for the

defendant and was a normal vehicle of communication between the plaintiff and San Miguel.

35.

**Texas Medical Board**

According to Tex. Occ. Code § 156.001, medical licensees register every two years.

Plaintiff last registered with the TMB as a medical licensee on June 28, 2011, under License No.

N-104. His permit expired on June 30, 2013.

36.

14

The TMB is an agency of the executive branch of the state government of Texas. It has the power to regulate the license permits of medical licensees. The TMB's authority is granted by the Texas Constitution. Texas Occupations Code Title 3. Health Professions Subtitle B. 9 Physicians Chapter 151. sets out the general provisions for the board. Tex. Occ. Code § 153.005. (a) *allows the board to act under its rules through the executive director, the executive committee, or another committee. Except as otherwise provided by this subtitle, the executive committee consists of the president, vice president, and secretary-treasurer of the board.* According to the TMB disciplinary protocol, [Exhibit H: Pages 19 -21 of Plaintiff's Appendix], the committees that act through the executive committee include: The Disciplinary Process Review Committee and; the Litigation Department ("Board Committees").

37.

Pursuant to Tex. Occ. Code § 164.001., the Executive Committee had the power to impose sanctions on the plaintiff's Texas medical license. On June 14, 2013, the TMB's Executive Committee entered a final order against the plaintiff prohibiting him from practicing medicine in Texas until he complied with the sanctions imposed, [Exhibit A: Pages 1-11 of Plaintiff's Appendix].

38.

On August 1, 2013, the Executive Committee sent plaintiff a letter in the mail whereby the committee stated the proceeding which served as the basis for the 2013 order was still active and, instructed plaintiff to wait three months for an update, [Exhibit C]. The proceeding which served as the basis for the Final Order was not active when the board drafted and sent plaintiff the letter in August. The Executive Committee itself entered the final order in June. A proper inquiry into the circumstances of the order would have shown the case was in fact, closed before

"Exhibit C" was drafted and sent to the plaintiff. The members of the Executive Committee agreed to and did send plaintiff a letter with false information and false instructions.

<center>39.</center>

Tex. Occ. Code § 164.009 states: *A person whose license to practice medicine has been revoked or who is subject to other disciplinary action by the board may appeal to a Travis County district court not later than the 30th day after the date the board decision is final.* The text of the letter shows the board intended for plaintiff to believe the proceeding against him was still open, a final determination had not been made and, for plaintiff to wait for an update. Plaintiff did not appeal the Final Order. As instructed, plaintiff waited for the board to update him on the case he believed was still open.

<center>40.</center>

As the licensing authority for Texas, the Executive Committee owed plaintiff a fiduciary duty to provide for fair and honest procedures in the sanctioning of his license. The committee had the duty to inform plaintiff that the information in "Exhibit C" was erroneous. In response to "Exhibit C", plaintiff a made motion to admit evidence into the case he believed was still "open", [Exhibit S: Page 55 of Plaintiff's Appendix]. "Exhibit C" caused plaintiff to be deprived of his right to appeal the TMB Legal No. 10-5774/11-0141, Final Order. Plaintiff did not learn that "Exhibit C" contained false information or that the case was actually closed until Barbara Jordan mailed him in December 2013, regarding a new TMB legal proceeding, TMB Legal No. 14-0096.

<center>41.</center>

According to Tex. Occ. Code § 156.005, *if a licensee's registration permit has been expired for one year or longer, the license automatically cancels unless an investigation is*

<center>16</center>

*pending.* Plaintiff's license was set to cancel in June 2014. Before his license canceled, the Executive Committee caused TMB Legal No. 14-0096, to be initiated against him in November 2013. The new proceeding was filed because plaintiff allegedly failed to comply with the June 2013 Final Order, failed to respond to requests for information and, displayed conduct likely to deceive/defraud the public or injure the public.

42.

Plaintiff never received formal notice of the complaint for TMB Legal No. 14-0096, pursuant to Tex. Occ. Code § Sec. 164.005 . Plaintiff lived in New York for the duration of 2013, and did not receive notice in the mail or email. Plaintiff was not served by a process server. Plaintiff never received the board's written affidavit that detailed the nature of the charge as required by § Sec. 164.005. There is no date given for the initiation of TMB Legal No. 14-0096, on plaintiff's physician profile, [Exhibit R: Pages 51-54 of Plaintiff's Appendix]. In the TMB's complaint filed with the SOAH in April 2014, it concedes in its Procedural Background that plaintiff only received notice of an informal settlement conference for the proceeding. The board does not suggest plaintiff was served with notice for the initiation of TMB Legal No. 14-0096, [Exhibit T: Page 56 of Plaintiff's Appendix].

43.

It is plaintiff's belief that TMB Legal No. 14-0096 was started on or about November 1, 2013. The Executive Committee sent plaintiff "Exhibit C" on August 1, 2013, and instructed him to wait three months for an update on the old proceeding. Jordan emailed the plaintiff in December 2013 to inform him about an ISC for the new proceeding. Therefore, TMB Legal No. 14- 0096, commenced on or about November 1, 2013. Of note, the executive committee accused

plaintiff of failing to respond to requests for information during the time when the board itself instructed plaintiff to wait three months for an update, [Exhibit C].

44.

The purported first step of the board's disciplinary process is to determine, *"whether there is evidence to support an allegation that there has been a violation of the Medical Practice Act,"* [Exhibit H: Pages 19 -21 of Plaintiff's Appendix]. The committees never disclosed to the plaintiff, their "known" facts that were established after a reasonable pre-filing investigation to justify its reasonable belief that a claim against the plaintiff could be established to the satisfaction of a court.

45.

Acting pursuant to Tex. Occ. Code § 164.0025, the Executive Committee agreed to and did schedule an ISC for TMB Legal No. 14-0096, in December 2013. Plaintiff did not reach an agreed settlement with the board's committees for TMB Legal 14-0096, prior the scheduling of the December ISC. The committees never requested information from the plaintiff in response to its findings before scheduling the ISC. Plaintiff never requested the complaint be referred for informal proceedings. The "Board Committees", without reviewing any information from the plaintiff, and acting pursuant to Tex. Occ. Code § 164.0025 (b), determined TMB Legal No. 14-0096, should not be dismissed or settled. The committees agreed to and did refer TMB Legal No. 14-0096, to Jordan to litigate before the SOAH. In doing so, the committees deprived plaintiff of his right to be heard.

46.

On December 16 and 17, respectively, of 2013, Barbara Jordan sent plaintiff a correspondence in the mail and, via email whereby Jordan informed plaintiff about the

18

rescheduling of a disciplinary ISC for TMB Legal No. 14-0096, [Exhibits: E and; B - Pages: 15;

and; 12, respectively, of Plaintiff's Appendix]. Jordan's mail and email was the first time

plaintiff became aware of TMB Legal No. 14-0096. It was also the first time plaintiff became

aware the information contained in "Exhibit C" was incorrect. Jordan's communications caused

plaintiff to spend time and money in making appearances before the TMB and SOAH.

47.

After TMB Legal No. 14-0096, was assigned to Jordan, the TMB committees continued

to deny plaintiff the opportunity to be heard. The December ISC was canceled and

never rescheduled. Jordan did not conduct discovery from the plaintiff. She refused to discuss the

matter. On March 5, 2014, plaintiff attempted to schedule a hearing, admit evidence and, request

production of documents [Exhibit I: Page 22 of Plaintiff's Appendix]. All of plaintiff's requests

were ignored by the board. A hearing was never held between the plaintiff and the board for

TMB Legal No. 14-0096.

48.

The members of the executive committee agreed to and did report its findings for TMB

Legal No. 14-0096, to the SOAH causing it to initiate SOAH DOCKET # 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, on April

29, 2014. Plaintiff appeared before the SOAH on June 20, 2014, when he uploaded documents to

the docket [Exhibit F: Page 17 of Plaintiff's Appendix] and, appeared before the ALJ in July

2014.

49.

Jordan sent the plaintiff several emails regarding TMB Legal No. 14-0096. At no point

did she concede that there was no evidence to support it. On June 13, 2014, Jordan sent plaintiff

an email stating TMB Legal No. 14-0096, was moot because plaintiff had not paid for license

renewal, [Exhibit U]. This is false. **Tex. Occ. Code § 156.005** states that a license does not automatically cancel if an investigation is pending. It does not state that a pending proceeding becomes moot simply because a permit hasn't been paid for. Jordan attempted to deceive the plaintiff in order to lessen the suspect appearance of the fraudulent scheme to obtain a judgment against him and fraudulent scheme to permanently revoke his medical license.

<p style="text-align:center">50.</p>

On June 18, 2014, Jordan sent plaintiff another email regarding TMB Legal No. 14-0096. Jordan stated the proceeding was moot because the June 2013 Order terminated because plaintiff's license was no longer active, [Exhibit U]. TMB Legal No. 14-0096, began in November 2013, allegedly because plaintiff did not comply with the final order from June 2013. The issue was not whether the final order had terminated by June 2014. Again, Jordan made false statements to lessen the suspect appearance of the fraudulent scheme to permanently revoke plaintiff's medical license. Jordan also used the mail/wires in attempt to get plaintiff to agree to dismiss SOAH DOCKET #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, under false pretenses in effort to deny plaintiff the right to a fair and impartial hearing.

<p style="text-align:center">51.</p>

On July 3, 2014, Jordan emailed the plaintiff instructing him to submit his request for subpoena to the TMB litigation department. On July 9, 2014, Jordan emailed the plaintiff to inform him that payment for the request should be submitted to the same address [Exhibit V]. Plaintiff paid for the subpoena request evident in the board's "ruling" on it. Jordan's emails regarding the subpoena were executed as a part of the scheme to place a burden on plaintiff's right to have a subpoena issued for his disciplinary hearing.

<p style="text-align:center">52.</p>

<p style="text-align:center">20</p>

On July 14, 2014, Scott Freshour sent plaintiff a letter in the mail whereby he denied plaintiff's request for subpoena of the medical records from the hospital. Freshour stated the records were not related to the "current" allegations for SOAH DOCKET #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, [Exhibit G]. Freshour's letter lessened the suspect appearance of TMB Legal No. 14-0096, by implying there were facts to support TMB Legal No. 14-0096, that were separate and apart from the facts supporting the final order. Freshour's letter was fraudulent also because he implied the TMB had the power to deny plaintiff's subpoena request for the proceeding. Instead of conceding that it did not have the power to rule on plaintiff's request, the board made a misrepresentation that it did. This was done to deter plaintiff from seeking a ruling on his subpoena request from the proper authorities. Plaintiff was denied the opportunity to prove the original complaint by the hospital to obtain the June 2013 Final Order was fabricated, particularly, the hospital's allegation that plaintiff wrote unauthorized orders was false. Freshour's letter placed an undue burden on plaintiff's right to have a subpoena issued for his disciplinary proceeding.

53.

Tex. Occ. Code § **164.009** granted plaintiff the right to appeal the TMB's June 2013 Final Order. When the Executive Committee sent plaintiff "Exhibit C", it caused him to be denied the right to appeal. When the Executive Committee initiated TMB Legal No. 14-0096, against the plaintiff's medical license, it was acting under the color of the Texas Constitution. The Due Process Clauses of the Fifth and Fourteenth Amendments to The United States Constitution, Tex. Occ. Code § 164.003. (b) (3) and, Tex. Occ. Code § 164.004, all required the committee to provide plaintiff due process when exposing him to a disciplinary proceeding. The Executive Committee did not provide plaintiff with formal notice or a hearing for TMB Legal No. 14-0096.

21

The Executive Committee's failure to give plaintiff proper notice and a hearing for the proceeding, violated plaintiff's right to due process required by the US Constitution., Tex. Occ. Code § 164.003. (b) (3) and, Tex. Occ. Code § 164.004. There was no basis in fact or in law to bring TMB Legal No. 14-0096, against the plaintiff. Plaintiff was innocent of the charges. TMB Legal No. 14-0096, caused plaintiff to spend time and money making appearances before the TMB, SOAH and NYDOH, thereby denying plaintiff the ability to practice his profession without the unjustified label of infamy. 18 U.S.C. § 1343, makes it criminal to use the mail and wires to execute a scheme to defraud for obtaining money or property by means of false or fraudulent pretenses. Jordan's emails to the plaintiff on July 3 and 9, 2014, sought to extort money from the plaintiff by fraudulent means (i.e. subpoena request fee). All emails and letters sent by the board regarding TMB Legal No. 14-0096, were part of a scheme to induce plaintiff to make payment in the form of sanctions for allegedly violating its Final Order, and a scheme to permanently revoke plaintiff's license for the alleged violation. Freshour's communication to the plaintiff was criminal in that he used the mail/wires to imply he was a clerk of a justice court in violation of Tex**as Penal Code - PENAL § 37.11**. Impersonating Public Servant. The board's deliberate removal of all information from the board's website regarding TMB Legal No. 14-0096, indicates the members of the TMB were aware of their criminal behavior.

<div align="center">54.</div>

## V. SECTION § 1983 VIOLATIONS

### A. Section 42 U.S.C. § 1983 and Section 42 U.S.C. § 1985 Civil Conspiracy

Plaintiff alleges a conspiracy existed among the Methodist Hospitals of Dallas, Ray Jackson, Oscar San Miguel and the stated members of the Texas Medical Board. The defendants agreed to and did conspire to: discriminate against the plaintiff in the terms of his

<div align="center">22</div>

employment as a medical doctor; deny plaintiff of his ability to enter into his contract with John Peter Smith Hospital to be trained in Sports Medicine and Pain Intervention; sanction plaintiff's Texas medical license; deny plaintiff of a right to a fair and impartial hearing for Civil Action Nos. 3:11-CV-0017-B, and 3:14-CV-02958-B; deny plaintiff of the right to a fair and impartial hearing for TMB Legal No. 10-5774/11-0141; deprive plaintiff of his right to appeal the TMB 2013 Final Order; deny plaintiff of the right to a fair and impartial hearing for TMB Legal No. 14-0096; induce plaintiff to make payment in the form of sanctions for allegedly violating a TMB Final Order, execute a scheme to permanently revoke plaintiff's medical license; obtain money from the plaintiff by fraudulent means; keep plaintiff, federal courts and, the SOAH ignorant of the true facts regarding Civil Action Nos. 3:11-CV-0017-B and 3:14-CV-02958-B and, TMB Legal Nos. 10-5774/11-0141, and 14-0096; injure plaintiff's professional reputation as a medical doctor; deprive plaintiff of his right to freely practice medicine across the United States without an unjustified label of infamy and; burden plaintiff's right to have a subpoena issued for his disciplinary hearing. Plaintiff alleges the defendants discriminated against him as a member of a protected class.

<div align="center">55.</div>

## AGREEMENT

Plaintiff incorporates here, the foregoing paragraphs to allege the acts committed by the hospital. The hospital's knowledge of the conspiracy arises from the fact that the hospital first violated plaintiff's rights at the disciplinary hearing in May 2010. The hospital did not provide adequate notice of the charges and planned action against the plaintiff; attempted to prohibit plaintiff from recording the hearing; failed to disclose evidence and complete list of charges against the plaintiff; refused to allow plaintiff to cross examine witnesses and exchange

evidence, disciplined plaintiff for reasons not stated in his suspension letter and; attempted to

force the plaintiff to change his responses, [Exhibit N]. The hospital could not meet the

preponderance of evidence standard to deny plaintiff unemployment benefits from the TWC in

2010, [Exhibit L].

56.

Jackson knew of the TWC's ruling and the fact that the hospital did not have evidence to justify

its action. The hospital and Jackson knew that the hospital fired the plaintiff without cause.

Jackson knew of evidence establishing plaintiff's claims against the hospital prior to Civil Action

No. 3:11-CV-0017-B, being disposed of. Jackson was provided with plaintiff's letter to the

hospital's DIO in November 2009, complaining of individual harassment. Jackson copied the

letter in October 2010, [Exhibit X]. Jackson has also admitted to being aware of plaintiff's audio

recording of the disciplinary hearing on May 20, 2010.

57.

Jackson and the hospital agreed to and did conceal the hospital's lack of evidence from

the Court for plaintiff's racial discrimination lawsuit, Civil Action No. 3:11-CV-0017-B. On

February 3, 2012, the hospital and Jackson, without plaintiff's knowledge and consent, agreed to

forego mediation in Civil Action No. 3:11-CV-0017-B, [Exhibit C II]. By foregoing mediation,

plaintiff was prevented from being apprised of the evidence on file with the Court. Plaintiff never

viewed the evidence the hospital used to support its motion for summary judgment. Jackson

failed to admit plaintiff's "Exhibits N and, X" in response to the hospital's motion for summary

judgment and; submitted a forged instrument to the Court, [Exhibit D II]. All acts denied

plaintiff the right to a fair trial. Each of Jackson's acts served to benefit the hospital thereby

allowing it to avoid liability for wrongful termination. The acts also benefit Jackson by

24

concealing his malpractice. After making the agreement with Jackson, the hospital knowingly provided the Court and TMB with false affidavits. The affidavits enabled the hospital to obtain a dismissal of plaintiff's claims for the first lawsuit and, obtain a final order against the plaintiff for TMB Legal No. 10-5774/11-0141, thereby reinforcing the narrative that it had done nothing wrong in firing him in 2010.

<div align="center">58.</div>

Jackson and the hospital were at all times an interdependent and coordinated association working to advance a common goal (i.e. conceal facts from the plaintiff, Court and, SOAH). Their acts suppressed plaintiff's objective evidence and allowed the Court and TMB to consider only the hospital's fabricated affidavits. By committing the foregoing acts, Jackson and the hospital conspired to violate sections 1962 (a), (b), and (c), on or prior to February 3, 2012.

<div align="center">59.</div>

Jackson discussed plaintiff's TMB Legal No. 10-5774/11-0141, with San Miguel over the phone on February 20, 2013, [Exhibit B II]. Jackson recruited San Miguel to join the conspiracy during the phone call. Plaintiff incorporates here, the *"Concealment of Jackson's Conduct"* claim against San Miguel to show he had knowledge of the nature of the conspiracy to deny plaintiff his right to a fair and impartial hearing. San Miguel did not pursue plaintiff's inquiries nor investigate the hospital's allegations in order to conceal Jackson's ineffective counsel and to deter plaintiff from pursuing the information that would have further challenged the hospital's allegations against him for TMB Legal No. 10-5774/11-0141. San Miguel knew of and agreed to the goal of the conspiracy and, agreed to violate sections 1962 (a), (b), and (c), on or about February 20, 2013.

<div align="center">60.</div>

Jordan never informed San Miguel of the board's Motion for Summary Disposition against the plaintiff for TMB Legal No. 10-5774/11-0141. As San Miguel was unaware of the TMB's motion, he did not oppose it, [Exhibit M: Pages 28 -30 of Plaintiff's Appendix]. San Miguel's failure to oppose the motion resulted in a prejudicial order being entered against the plaintiff. The hospital benefitted from San Miguel's conduct because it allowed the hospital's "new" allegations against the plaintiff to go unchallenged thereby allowing the SOAH to recommend sanctions against the plaintiff.

61.

TMB Legal No. 10-5774, originally accused plaintiff of writing unauthorized orders. On or about August 16, 2011, the hospital filed a second complaint against the plaintiff, TMB Legal No. 11-0141, without a final disposition of the first complaint, TMB Legal No. 10-5774. The Executive Committee members agreed to merge TMB Legal No. 10-5774 and TMB Legal No. 11-0141, into one case. The hospital and the Executive Committee agreed in August 2011, to act in concert to prosecute plaintiff with the use of "new" (and false) information in the form of TMB Legal No. 10-5774/11-0141. The Executive Committees' act benefitted the hospital by allowing it to bring "new" allegations. The TMB and hospital agreed to and did conceal the hospital's lack of evidence for its original allegations by merging the cases.

62.

The TMB Executive Committee and its associated committees intended to sanction plaintiff's medical license before it initiated TMB Legal No. 14-0096. TMB protocols required all evidence to support a complaint to be reviewed by the board several times even before an investigation is undertaken. The members of the TMB deliberately bypassed their own rules, ignored the state's statutes requiring due process and ignored plaintiff's request for hearing. The

members of the board deliberately and intentionally prevented plaintiff from presenting contrary evidence in support of his defense.

<div align="center">63.</div>

The hospital and board's common actions (i.e. joint prosecution of TMB Legal No. 10-5774/11-0141, and initiation of separate respective complaints against the plaintiff), reflect a shared goal to sanction plaintiff's medical license. Denying plaintiff a fair and impartial hearing for his board proceedings allowed the false narrative to persist that the hospital had done nothing wrong in firing him. The denial of plaintiff's right to appeal was to the hospital and board's mutual benefit. It prevented plaintiff from challenging the hospital's allegations and allowed the TMB's order to become final.The Executive Committees' acts regarding TMB Legal No.14-0096, helped to solidify the narrative that plaintiff's practice of medicine created a risk to the public. All acts occurred following the agreement made between the Executive Committee and hospital in August 2011. The hospital and TMB members knew of and agreed to the goal of the conspiracy and, agreed to violate sections 1962 (a), (b), and (c), on or prior to August 2011.

<div align="center">64.</div>

<div align="center">**DAMAGES**</div>

By reason of the foregoing paragraphs, plaintiff was: denied of his ability to enter into his contract with John Peter Smith Hospital to be trained in Sports Medicine and Pain Intervention; denied of a meaningful opportunity to present and defend against the claims in litigation for Civil Action Nos. 3:11-CV-0017-B, and 3:14-CV-02958-B; denied of a meaningful opportunity to present and defend against the claims in litigation for TMB Legal No. 10-5774/11-0141; denied the ability to practice medicine in Texas; deprived of his right to appeal

<div align="center"></div>

the decision for TMB Legal No. 10-5774/11-0141, and; denied of a meaningful opportunity to present and defend against the claims in litigation for TMB Legal No. 14-0096 .

65.

Plaintiff was induced to make appearances before the TMB and SOAH in response to Jordan's mail and emails regarding TMB Legal No. 14-0096. In making the appearances, plaintiff was denied the liberty interest in being free to move about, live, and practice his profession without the burden of an unjustified label of infamy. Plaintiff was, again, denied the liberty interest in being free to move about, live, and practice his profession without the burden of an unjustified label of infamy when the New York Office of Professional Medical Conduct, initiated proceedings against him in 2014, after receiving information from the TMB that he violated Texas' Medical Practice Act. Plaintiff's defense of himself for NYOPMC #CO-13-07-3474-A, resulted in the proceeding being abandoned without sanctions imposed.

66.

Plaintiff suffered reputational injury in his profession when the Executive Committee "posted" its findings that plaintiff violated the Medical Practice Act in the TMB Bulletin, to the SOAH, to the NYDOH, on plaintiff's physician profile for the TMB website and, to the National Practitioner's Database. Plaintiff is currently being denied the ability to freely obtain a license in all US states and freely obtain credentialing by hospitals and insurance companies due to publication of all decisions secured by the defendants' conspiracy against him and denial of his rights. Plaintiff's ability to earn a living in his profession has been diminished.

67.

Indeed, the publications have already injured plaintiff's business reputation. Employers who review the information posted about the plaintiff on the Texas Medical Board Website and

National Practitioner's Database are unlikely to credential plaintiff and offer him employment, because the TMB and its co-conspirators have caused them to believe plaintiff practices medicine in a way that creates a risk to the public. Plaintiff has permanently lost potential job opportunities due to his inability to obtain board certification and train in Sports Medicine and Pain Intervention. As long as the board continues to publish the stated information, plaintiff's business reputation will continue to be injured.  By reason of the foregoing, plaintiff has also been emotionally traumatized suffering from irritability, restlessness and inability to concentrate. In 2009, plaintiff was awarded Arnold P. Gold Foundation Humanism and Excellence in Teaching Award. In 2010, plaintiff was awarded a fellowship opportunity to train in Sports Medicine and Pain Intervention. Plaintiff's emotional trauma has been exacerbated by the fact that has to explain to potential employers that the information posted by the board is not true and he can still provide the same standard of care that previously won him national recognition. The damages claimed by the plaintiff for the deprivation of his right to a fair and impartial hearing for Civil Action Nos. 3:11-CV-0017-B, and 3:14-CV-02958-B, are not a matter of pure speculation or conjecture. Plaintiff's compensable injury is based on the hospital's breach of contract and intentional interference with plaintiff's contract to train in Sports Medicine and Pain Intervention with JPS.

68.

## B. 42 U.S.C. § 1983 Action

Plaintiff re-alleges and incorporates here, the foregoing paragraphs to establish the acts committed by the TMB members acting under the color of the Texas Constitution. By reason of the foregoing, plaintiff's civil rights were violated including, his: right to be appeal the TMB 2013 Final Order pursuant to Tex. Occ. Code § 164.009; his right to have a meaningful

29

opportunity to present and defend against the claims in litigation for TMB Legal No. 14-0096, pursuant to Tex. Occ. Codes: § 164.003. (b) (3), § 164.004, § 164.005. and, The Due Process Clauses of the Fifth and Fourteenth Amendments to The US Constitution; his right to be free to move about, live, and practice his profession without the burden of an unjustified label of infamy; his right to have a subpoena issued for his disciplinary proceeding and his right to have a meaningful opportunity to present and defend against the claims in litigation for Civil Action No. 3:14-CV-02958-B.

69.

The Due Process Clause prohibits government officials from arbitrarily depriving a person of certain constitutionally protected fundamental property or liberty interests (*Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1026 (9th Cir. 2007). These interests include the right to pursue a given profession (*Greene v. McElroy,* 360 U.S. 474, 492 (1959). Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential (*Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971). "To establish a liberty interest sufficient to implicate the fourteenth amendment safeguards, the individual must be not only stigmatized but also stigmatized in connection with... [a] government official's conduct [that] deprived the plaintiff of a previously recognized property or liberty interest in addition to damaging the plaintiff's reputation (*Siegert v. Gilley*, 500 U.S. 226, 234, 111 S.Ct. 1789, 1794, 114 L.Ed.2d 277 (1991)."

70.

The Executive Committee and its committees denied plaintiff the constitutionally required procedures necessary to challenge their findings when they denied him notice and an

opportunity to be heard for TMB Legal No. 14-0096. The Executive Committees denial of

procedural protections allowed it to report its unchallenged findings to the NYDOH and, SOAH

in 2014. The Executive Committee caused plaintiff to make an appearance before both the

NYDOH and SOAH to defend himself, [Exhibits: J and F: Pages 23 and 17, respectively of

Plaintiff's Appendix], thereby denying plaintiff the ability to freely practice his profession across

the U.S. without the burden of the TMB's accusation that violated the Medical Practice Act. The

"liberty interest" here is the interest an individual has in being free to move about, live, and

practice his profession without the burden of an unjustified label of infamy (*Board of Regents v.

Roth*, 408 U.S. at 572, 92 S.Ct. at 2706, 33 L.Ed.2d at 557).

71.

In the case of *Wisconsin v Constantineau*, the US Supreme Court found a similar interest

to exist. In that case the chief of police of Hartford, without notice or hearing to the plaintiff,

caused to be posted a notice in all retail liquor outlets in Hartford that sales or gifts of liquors to

the plaintiff were forbidden for one year. The plaintiff then sued the chief of police for damages

and injunctive relief. The State of Wisconsin intervened as a defendant on the injunctive phase of

the case (*Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971).

72.

The three-judge court held the Act unconstitutional and enjoined its enforcement stating:

"In `posting' an individual, the particular defendant is doing more than denying plaintiff

the ability to purchase alcoholic beverages within the city limits. In essence, defendant is giving

notice to the public that he has found the plaintiff's behavior to fall within one of the categories

enumerated in the statutes. It would be naive not to recognize that such `posting' or

characterization of an individual will expose him to public embarrassment and ridicule, and it is

our opinion that procedural due process requires that before one acting pursuant to State statute

can make such a quasi-judicial determination, the individual involved must be given notice of the

intent to post and an opportunity to present his side of the matter." 302 F. Supp., at 864. Where

the State attaches "a badge of infamy" to the citizen, due process comes into play (*Wieman v.*

*Updegraff*, 344 U. S. 183, 191). "[T]he right to be heard before being condemned to suffer

grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal

conviction, is a principle basic to our society (*Anti-Fascist Committee v. McGrath*, 341 U. S.

123, 168)." The Supreme Court ruled in favor of the plaintiff finding that she was not afforded a

chance to defend herself and that she may have been the victim of an official's caprice. The

Supreme Court agreed with the District Court that the plaintiff's private interest was such that

those requirements of procedural due process must be met.

<div align="center">73.</div>

The facts of *Wisconsin* are similar to our case here. Without notice or hearing to the

plaintiff, the TMB gave notice to the public, NYDOH and, SOAH that it found plaintiff's

behavior to constitute a violation of the Medical Practice Act. The executive committee caused

the information to be publicly disseminated pursuant to Tex. Occ. Code § 154.002 and, placed on

plaintiff's physician profile pursuant to Tex. Occ. Code § 154.006. The executive committee's

report to the NYDOH in March 2014, caused New York to open OPMC # CO 13- 07 -3474-A,

against plaintiff's New York medical license for suspicion that he was unlawfully practicing

medicine in Texas, [Exhibit J]. Also in 2014, the TMB reported its allegations against the

National Practitioners Database.

<div align="center">74.</div>

<div align="center">32</div>

In our case, the government acted without probable cause making its conduct even more egregious than the State's in Wisconsin. There was no reasonable justification for alleging plaintiff violated the TMB's 2013 final order. Labeling plaintiff with criminal behavior in his profession is degrading. More degrading than being labeled an "excessive drinker" like the plaintiff in *Wisconsin*. The private interest here is far more significant than that protected in *Wisconsin*. Here, the liberty interest involves plaintiff's ability to freely practice medicine, not simply the liberty to buy alcohol. Nevertheless, this court should make the same determination reached in Wisconsin and find that plaintiff was not afforded a chance to defend himself before being defamed by the defendants acting under the color of law. Plaintiff's interest in being free to move about the country and work without being accused of criminal behavior in his profession is an interest worthy of procedural protection.

75.

The law presumes certain categories of statements are defamatory per se, including statements that (1) unambiguously charge a crime, dishonesty, fraud, rascality, or general depravity or (2) that are falsehoods that injure one in his office, business, profession, or occupation (*Main v Royall*, 348 S. W. 3d 318, 390 (Tex App. –Dallas 2011, no pet.). Here, the Executive Committee denied plaintiff procedural protections in order to unambiguously charge him with violating the Medical Practice Act and, report the charges to third parties. The Executive Committee abandoned its charges in July 2014. Since the TMB unlawfully labeled plaintiff a felon in his profession, the law presumes the Executive Committee has injured his reputation and he is entitled to relief.

76.

## VI. FRAUD

33

In the alternative to pleading acts to support his conspiracy claims, plaintiff asserts the defendants committed fraud under the common law to injure him. Plaintiff realleges and incorporates here, the foregoing paragraphs to establish causes of action for fraud under the common law against the Texas Medical Board's Executive Committee, Barbara Jordan and, Scott Freshour. On August 1, 2013, the Executive Committee sent plaintiff a letter in the mail whereby the committee stated the proceeding which served as the basis for the 2013 order was still active and, instructed plaintiff to wait three months for an update, [Exhibit C]. The proceeding which served as the basis for the Final Order was not active when the board drafted and sent plaintiff the letter in August. The Executive Committee itself entered the final order in June. A proper inquiry into the circumstances of the order would have shown the case was in fact, closed before "Exhibit C" was drafted and sent to the plaintiff. The members of the Executive Committee agreed to and did send plaintiff a letter with false information and false instructions. The text of the letter shows the board intended for plaintiff to believe the proceeding against him was still open, a final determination had not been made and, for plaintiff to wait for an update, [Exhibit C]. Plaintiff did not appeal the Final Order. As instructed, he waited for the board to update him on the case he believed was still open. In response to "Exhibit C", plaintiff a made motion to admit evidence into the case he believed was still "open", [Exhibit S]. "Exhibit C" caused plaintiff to be deprived of his right to appeal the TMB Legal No. 10-5774/11-0141, Final Order.

77.

## VII. RICO VIOLATIONS

## A. VIOLATION OF 18 U.S.C. § 1962(d)

In the alternative to pleading a claim for conspiracy under Sections § 1983 and

Section § 1985, plaintiff alleges the defendants formed an enterprise in violation of the Racketeer

Influenced and Corrupt Organizations Act, codified as Title IX of the Organized Crime Control

Act of 1970.

## 78.

## ENTERPRISE

Plaintiff incorporates here, the foregoing paragraphs to allege the existence and purpose

of "MHD Enterprise" among the Methodist Hospitals of Dallas, Ray Jackson, Oscar San Miguel

and the stated members of the Texas Medical Board. Jackson and San Miguel are both licensed

attorneys by the State Bar of Texas. They provide legal services for citizens of the United States.

The hospital provides medical services. The TMB's Executive Committee and, through its

associated committees, provide medical licensing services for the state of Texas. At all relevant

times, the members of the "MHD Enterprise" were "capable of holding a legal or beneficial

interest in property."

79.

Jackson, the hospital, and members of the TMB first came together for the common

purpose to litigate TMB Legal No. 10-5774, in 2010. Next, Jackson and the hospital were

associated to present Civil Action No. 3:11-CV-0017-B, to the federal court beginning in 2011.

Also in 2011, the hospital initiated a second complaint against the plaintiff, TMB Legal No. 11-

0141. The TMB executive committee members agreed to and did combine TMB Legal No. 10-

5774, and TMB Legal No, 11-0141 into one case. Jackson, the hospital, and the TMB were,

again, associated to litigate TMB Legal No. 10-5774/11-0141. Attorney for the board, Barbara

Jordan, agreed to and did litigate, TMB Legal No.10-5774/11-0141, on behalf of the board

beginning in 2012. San Miguel represented the plaintiff for TMB Legal No.10-5774/11-0141, from February to June 2013.

<div align="center">80.</div>

In sum, all members of the enterprise were associated for the litigation of TMB Legal No.10-5774//11-0141. The board proceeding lasted from June 2010 to June 2013. The associations between the members of the enterprise were originally formed to litigate, in an objective and adversarial nature, the issue of whether plaintiff was wrongfully terminated from the hospital and, whether he violated Texas statutes regarding the unlawful practice of medicine in 2010. In 2014, the TMB's Executive Committee and its associated committees were associated to litigate, lawfully and in accordance with the Texas constitution, TMB Legal No.14-0096. The enterprise's association for the presentation of the first lawsuit to the Court and, trial of plaintiff's TMB cases was separate and apart from the pattern of racketeering. From 2010 to 2014, the enterprise had sufficient time to pursue its purpose.

<div align="center">81.</div>

The MHD enterprise consisted of both consensual and hierarchical elements. The hospital and Jackson functioned together as a continuous decision-making unit from January 2011, to April 2012, submitting to the Court: a joint status report on February 10, 2011, [Exhibit C II: Page 73 of Plaintiff's Appendix], and, a joint motion to forego mediation on February 3, 2012, [Exhibit C II]. The motions allowed Civil Action No. 3:11-CV-0017-B, to proceed. The motions reflect a "meeting of the minds" between the hospital and Jackson. Jackson, the hospital, and the TMB's litigation department, also made consensual decisions and submitted similar motions to allow TMB Legal No. 10-5774/11-0141, to proceed before the TMB and SOAH. The TMB's

executive committee appointed Jordan to litigate TMB Legal No. 10-5774/11-0141, according to its disciplinary protocol.

<div align="center">82.</div>

The hospital provided affidavits to the TMB for the purpose of sanctioning the plaintiff for TMB Legal No.10-5774/11-0141. The TMB's executive committee members agreed to and did use the hospital's affidavits to enter a final order against the plaintiff in June 2013. In November 2013, the TMB's Executive Committee, the Disciplinary Process Review Committee and Litigation Department made a consensual agreement to initiate and litigate TMB Legal No.14-0096, against the plaintiff. Jordan was again, appointed to litigate the proceeding on behalf of the TMB.

<div align="center">83.</div>

<div align="center">

**PATTERN OF RACKETEERING**

</div>

Plaintiff re-alleges and incorporates here, the foregoing paragraphs to establish the predicate acts committed by Ray Jackson, Oscar San Miguel and members of the Texas Medical Board to state a pattern of racketeering. It was foreseeable that the mail and wires would be used by the all of the defendants. The use of mail and wires is a normal course of business for the defendants and was a normal vehicle of communication between the defendants and plaintiff.

<div align="center">84.</div>

The predicate acts were related because: [a] all acts were directed at the plaintiff (similar victim); [b] all acts were committed by individuals associated to litigate TMB Legal proceedings involving the plaintiff (similar participants); [c] all acts were committed regarding legal proceedings where plaintiff was either the respondent or complainant; [d] all affected interstate commerce via the use of mail or wires to send transmissions to the plaintiff (similar methods of

<div align="center">37</div>

commission); [e] all employed the use of fraud either by misrepresentation or concealment; [f] all acts had the purpose of denying plaintiff his constitutional rights (i.e. right to fully litigate upon Civil Action Nos. 3:11-CV-0017-B and 3:14-CV-02958-B, and TMB Legal No. 10-5774/11-0141, all the rights or defenses he was entitled to assert; right to appeal the TMB June 2013 Final Order; right to be free to move about and practice one's profession without the unjustified label of infamy and; right to have a subpoena issue) and; [g] as a result of the predicate acts, plaintiff was deprived of his constitutional rights.

85.

Plaintiff alleges the predicate acts constitute a closed period of repeated activity. Here, the predicate acts began in February 2012, and continued until July 2014, lasting a substantial period of time of more than just a few weeks or months. Unlike the predicate acts in *Burzynski*, the predicate acts here were related to four separate proceedings: Civil Action Nos. 3:11-CV-0017-B and 3:14-CV-02958-B and; TMB Legal Nos. 10-5774/11-0141, and 14-0096.

86.

Additionally, the threat of future racketeering conduct exists because the members of the enterprise are again associated to litigate a proceeding where plaintiff is a party. The foregoing paragraphs demonstrate how a primary objective of the enterprise has been to conceal facts from the decision-makers for plaintiff's legal proceedings. The District Court for the Northern District of Texas Dallas Division was victimized by the "MHD" enterprise for Civil Action No. 3:11-CV-0017-B, when it based its decision on omitted and fabricated evidence. The SOAH was also deceived by the enterprise when it made the recommendation to sanction plaintiff for TMB Legal No. 10-5774/11-0141. Further, plaintiff is eligible to seek renewal of his Texas license permit.

The foregoing paragraphs demonstrate how the board members have no reservation about committing unlawful acts against him to ensure he does not freely practice his profession.

87.

Plaintiff re-alleges and incorporates here, the foregoing paragraphs under his Section 42 U.S.C. § 1983 and Section 42 U.S.C. § 1985 Civil Conspiracy claims to establish the agreement among the members of the enterprise and, the injury he suffered as a result of their acts.

88.

## B. VIOLATIONS OF 18 U.S.C. § 1962(a)

Plaintiff re-alleges and incorporates here, the foregoing paragraphs to establish the necessary elements to state claims for violations of §1962(a) against the Executive Committee, Scott Freshour, Jackson and, San Miguel. Each of the stated defendants invested income derived from the pattern of racketeering activity. Jackson and San Miguel did so in the form of a retainer from the plaintiff, and Freshour, in the form of a subpoena request fee. Payment made by the plaintiff allowed Jackson and San Miguel to continue representing him during the time when the enterprise pursued its purpose. Monies paid by plaintiff to the board's litigation department were used to deny plaintiff's request.

89.

## C. VIOLATIONS OF 18 U.S.C. § 1962(b)

Plaintiff re-alleges and incorporates here, the foregoing paragraphs to establish the necessary elements to state claims for violations of §1962(b) against the Executive Committee, Barbara Jordan, Scott Freshour, San Miguel and the Methodist Hospitals of Dallas. Each of the stated defendants acquired or maintained control of the MHD Enterprise through a pattern of racketeering activity. San Miguel acquired control of the enterprise in February 2013 after

speaking to Jackson on the phone. San Miguel proceeded to commit the acts outlined above. The

Executive Committee, Jordan and, Freshour acquired control of the enterprise beginning in

August 2013. After the board acquired the enterprise, its members proceeded to exert control

over it by committing the stated predicate acts. The hospital maintained control over the

enterprise by submitting its knowingly false affidavits to the board for TMB Legal No. 10-

5774/11-0141. The hospital was unjustly enriched by the subsequent illegal conduct of the TMB

that served to: prevent plaintiff from asserting his rights for TMB Legal No. 10-5774/11-0141,

and TMB Legal No. 14-0096; prevent plaintiff from challenging the hospital's allegations and;

prevent plaintiff from challenging the false narrative set against him.

90.

## D. VIOLATIONS OF 18 U.S.C. § 1962(c)

Plaintiff re-alleges and incorporates here, the foregoing paragraphs to establish the

necessary elements to state claims for violations of §1962(c) against the Executive Committee,

Barbara Jordan, Scott Freshour, Jackson and, San Miguel. Each of the stated defendants

participated in the affairs of the MHD Enterprise by committing predicate acts.

91.

## VIII. PERMANENT INJUNCTION

Plaintiff is eligible to seek license renewal in the state of Texas. Plaintiff's family lives in

Texas and he desires to renew his permit. Plaintiff has not applied for renewal simply

because the stated defendants, with the exception of one, are current members of the board. The

unambiguous evidence in plaintiff's complaint demonstrates the board members' bias against

him. Plaintiff faces harm in not being free to obtain the permit as long as the stated members of

the board act through the Executive Committee. Texas is being deprived of having a perfectly

capable physician, and former recipient of the Arnold P. Gold Foundation Humanism and Excellence in Teaching Award, provide medical care for its citizens.

92.

For these reasons, plaintiff requests the Court enter a permanent injunction against the stated members of board prohibiting them from performing all executive functions related to applications for licensure including: reviewing; approving or; denying applications. This will ensure plaintiff's renewal application is reviewed in an unbiased manner. Plaintiff also requests that any and all information published by the board regarding: TMB Legal No. 10-5774/11-0141; TMB Legal No. 14-0096; and SOAH DOCKET # 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, be removed and retracted by the defendants as it continues to create an injustice by affecting plaintiff's ability to obtain a license permit in all US states. The information is depriving citizens across the United States, not just Texas, from receiving medical care a competent physician.

93.

It is always in the public's interest to deter against unlawful activity and to protect against the violation of a party's constitutional rights. The public has an interest in states fulfilling their fiduciary duty to provide for fair and honest procedures and, an interest in having the employees of state agencies follow procedures designed to prohibit the erroneous deprivation of rights. The defendants here failed to adhere to such procedures and, failed to abide by: the criminal code of the federal government of the United States; Ku Klux Klan Act and; the Texas Constitution. The defendants' acts and omissions have created an  injustice that can only be redressed by preventing such acts to occur again in the future.

94.

In order to: protect the public's interest in having fair and honest state procedures; protect the public's interest in deterring unlawful activity; protect the public's interest against the violation of Texas physicians' constitutional rights and; to protect its interest in having otherwise qualified physicians provide medical care for the public, plaintiff requests that the stated members of the Texas Medical Board be prohibited from performing any and all litigation functions regarding the discipline of Texas medical licensees including: opening investigations on a complaint; preparing panel reports; holding informal settlement conferences; preparing and reporting *formal complaints* to the Texas State Office of Administrative Hearings and; publishing disciplinary information on the board's website. It is clear that the defendants' predilection for illegal and criminal activity creates a substantial risk that perfectly qualified physicians will have their constitutional rights violated and be denied the ability to care for the Texas public. Due to their violation of §1962 (a), plaintiff also requests the defendant members of the board be prohibited from performing all executive functions related to the board's financial affairs including: collection of monies from Texas medical licensees and; assessing fees for violations of the Texas Medical Practice Act.

<div align="center">95.</div>

Plaintiff has provided the Court with undisputable evidence of the Texas Medical Board's Executive Committee, Disciplinary Process Review Committee, Barbara Jordan, and Scott Freshour's willful and intentional acts to deprive plaintiff of his rights protected by the Constitution of the United States. Based on the evidence presented to the Court and, in order to protect the public at large from the unlawful and criminal practice of law, plaintiff requests that lawyers: Timothy Webb; Barbara Jordan and; Scott Freshour be permanently disbarred from the practice of law for their repeated conduct in violation of the Ku Klux Klan Act.  Plaintiff also

requests Stanley S. Wang MD, JD also be disbarred for a period 3 years for his participation in depriving plaintiff of his constitutional rights.

<center>96.</center>

The balance of harms weighs in favor of the plaintiff. There is no threatened injury for the defendants in being prohibited from breaking the law. The Texas Medical Board does not face any harm in the stated defendants not being able to be involved in the license application process, the litigation of the board's disciplinary proceedings, or managing the board's finances. These duties can be appointed to other members of the board as plaintiff attempts to renew his permit. The removal of the board's published information about the plaintiff has no effect on the board members' ability to earn a living. Allowing plaintiff to freely obtain a license permit in Texas and, other US states by enforcing the proposed injunctions will benefit the public who receive his medical care.

<center>97.</center>

<center>IX. DAMAGES</center>

Plaintiff sustained the following damages as a result of the actions and/or omissions by the defendants described herein:

a. Actual damages resulting from the defendants' denial of plaintiff's right to a fair trial for Civil Action Nos. 3:11-CV-0017-B, and 3:14-CV-02958-B, based on the hospital's breach of contract and intentional interference with plaintiff's prospective contract to train in Sports Medicine and Pain Intervention at JPS.

b. All reasonable and necessary Attorney's fees incurred by or on behalf of the Plaintiff;

c. All reasonable and necessary costs incurred in pursuit of this suit;

<center>43</center>

d. Damage to reputation in the amount of $10,000,000 for each publication regarding TMB

Legal No. 10-5774/11-0141 and, TMB Legal No. 14-0096;

e. Emotional pain in the amount of $7,000,000;

f. Inconvenience;

g. Loss of enjoyment of life;

h. Mental anguish in the past;

i. Mental anguish in the future;

j. Loss of earnings in the past;

k. Loss of employment opportunities;

l. Loss of earning capacity which will, in all probability, be incurred in the future in the amount

of $ 10,000,000;

m. Damages in the amount of $5,000,000 for each civil rights violation,

n. Treble Damages,

o. Punitive damages at the highest rate allowed by law, and

p. Prejudgment and post-judgment interest at the highest rate allowed by law.

<div align="center">98.</div>

## X. PRAYER

**WHEREFORE,** Plaintiff, Jason Simmons, respectfully prays the Defendants be cited to

appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the

Plaintiff against Defendants jointly and severally for damages in an amount within the

jurisdictional limits of the Court; exemplary damages, together with interest as allowed by law;

costs of court; and such other and further relief to which Plaintiff may be entitled at law or in

<div align="center">44</div>

equity. Prays that the permanent injunction be granted to protect himself and the public at large.

Plaintiff hereby demands trial by jury.


      I , the undersigned declare under the penalty of perjury that: the stated facts; the referenced "Exhibits" and; affidavits on file, in support of Plaintiff's Second Amended Original Complaint are true and correct, are within my personal knowledge and, I am competent to testify.

Pro Se Plaintiff-Jason Simmons

417 Myrtle Ave

BOX #2

Brooklyn, NY 11205

## XI. CERTIFICATE OF SERVICE
      On this 24th day of November 2017, I hereby certify that I sent a copy of the foregoing document to the Clerk of the United States District Court, Western District of Texas, Austin Division, and to the defendants at the Texas Medical board via their counsel Assistant Attorney General Benjamin Walton.

**BY CERTIFIED MAIL TO**:
CLERKS OFFICE
US District Clerk's Office
501 West Fifth Street, Suite 1100
Austin, TX 78701

Pro Se Plaintiff-Jason Simmons
417 Myrtle Ave
BOX #2
Brooklyn, NY 11205

45

## TABLE OF CONTENTS

I. PARTIES AND SERVICE...............................................................................page 2
II. JURISDICTION..........................................................................................page 2
III. FACTS......................................................................................................page 2
IV. DEFENDANTS' ACTS...............................................................................page 6
Methodist Hospitals of Dallas.........................................................................page 6
*Refusal of GMEC Meeting*............................................................................page 7
*Non - Disclosure of Pages*............................................................................page 7
*Right to Disclosure "Combativeness" Allegation*...........................................page 8
*Right to Disclosure - Continuity Clinic*........................................................page 8
Ray Jackson...................................................................................................page 8
*Concealment of Affidavits*............................................................................page 9
*"Entire File"*...............................................................................................page 11
Oscar San Miguel............................................................................................page 12
*Concealment of Jackson's Conduct*...............................................................page 12
Texas Medical Board........................................................................................page 14
V. SECTION § 1983 VIOLATIONS..................................................................page 22
A. Section 42 U.S.C. § 1983 and Section 42 U.S.C. § 1985 Civil
Conspiracy....................................................................................................page 22
AGREEMENT.................................................................................................page 23
DAMAGES.....................................................................................................page 27
B. 42 U.S.C. § 1983 Action.............................................................................page 29
VI. FRAUD....................................................................................................page 33
VII. RICO VIOLATIONS.................................................................................page 34
A. VIOLATION OF 18 U.S.C. § 1962(d)...........................................................page 34
ENTERPRISE..................................................................................................page 35
PATTERN OF RACKETEERING......................................................................page 37
B. VIOLATIONS OF 18 U.S.C. § 1962(a).........................................................page 39
C. VIOLATIONS OF 18 U.S.C. § 1962(b).........................................................page 39
D. VIOLATIONS OF 18 U.S.C. § 1962(c).........................................................page 40
VIII. PERMANENT INJUNCTION...................................................................page 40
IX. DAMAGES...............................................................................................page 43
X. PRAYER....................................................................................................page 44
XI. CERTIFICATE OF SERVICE.....................................................................page 45

## STATUTES

18 U.S.C. § 1343............................................................................................page 22
18 U.S.C. § 1962(a).............................................................................page 25, 27, 39, 42
18 U.S.C. § 1962(b)............................................................................page 25, 27, 39
18 U.S.C. § 1962(c).............................................................................page 25, 27, 40
18 U.S.C. § 1962(d)............................................................................page 34
Racketeer Influenced and Corrupt Organizations Act, codified as Title IX of the Organized
Crime Control Act of 1970.............................................................................page 2, 35
Sections § 1983......................................................................page 2, 22, 29, 35, 39, 41, 42
Section § 1985...............................................................................page 22, 35, 39

Title VII of the Civil Rights Act of
1964.........................................................................................page 2
Fifth Amendment..............................................................page 21, 30
Fourteenth Amendment....................................................page 21, 30

## STATE STATUTES

Texas Occupations Code Title 3. Health Professions Subtitle B. 9 Physicians Chapter
151......................................page 15
Tex. Occ. Code § 153.005. (a)..................................page 15
Tex. Occ. Code § 156.001...........................................................................page 14
Tex. Occ. Code § 156.005...........................................................................page 16, 20
Tex. Occ. Code § 164.001..........................................................................page 15
Tex. Occ. Code § 164.0025.........................................................................page 18
Tex. Occ. Code § 164.0025 (b)....................................................................page 18
Tex. Occ. Code § 164.003. (b) (3)...........................................................page 21, 22, 30
Tex. Occ. Code § 164.004...........................................................................page 21, 22, 30
Tex. Occ. Code § Sec. 164.005...................................................................page 17, 30
Tex. Occ. Code § 164.009...........................................................................page 16, 21, 29

Texas Penal Code - PENAL § 37.11. Impersonating Public Servant..............................page 22

## OTHER AUTHORITIES
ACGME policy IV.C1.b.......................................................................................page 7, 8

## CASES

*Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1026 (9th Cir.
2007).................................................................................................................page 30
*Anti-Fascist Committee v. McGrath*, 341 U. S. 123, 168)...................................page 32
*Board of Regents v. Roth*, 408 U.S. at 572, 92 S.Ct. at 2706, 33 L.Ed.2d at 557)...............page 31
*Cadle Co. v. Shultz*................................................................................page 12
*Greene v. McElroy*, 360 U.S. 474, 492 (1959)...................................................page 30
*Main v Royall*, 348 S. W. 3d 318, 390 (Tex App. –Dallas 2011, no pet.).............................page 33
*Siegert v. Gilley*, 500 U.S. 226, 234, 111 S.Ct. 1789, 1794, 114 L.Ed.2d 277 (1991).........page 30
*Wieman v. Updegraff*, 344 U. S. 183, 191).........................................................................page 32
*Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515
(1971).................................................................................................................page 30, 31, 33

## TABLE OF EXHIBITS
EXHIBIT B: BARBARA JORDAN EMAIL - ISC.................................................19
EXHIBIT C: TMB LETTER - ACTIVE INVESTIGATION...........5, 15, 16, 17, 18, 19, 21, 34
EXHIBIT E: BARBARA JORDAN LETTER - ISC PROCEEDING...............................19
EXHIBIT F: PLAINTIFF'S SOAH APPEARANCE.............................................19, 31
EXHIBIT G: TMB DENIAL OF PLAINTFF'S REQUEST FOR SUBPOENA................6, 21

EXHIBIT I: EMAIL TO JORDAN RE MOTIONS FOR: NEW HEARING; PRODUCTION; ADMIT NEW EVIDENCE……………………………………………………………....…19
EXHIBIT J: NEW YORK STATE DEPARTMENT OF HEALTH OPMC #CO-13-07- 3474-A……………………………………………………………………………....……31, 32
EXHIBIT K: METHODIST HOSPITALS OF DALLAS SUSPENSION LETTER……....…..7, 8
EXHIBIT O: METHODIST HOSPITALS OF DALLAS' AFFIDAVITS FOR TMB FINAL ORDER……………………………………………………………………….3, 7, 8, 9
EXHIBIT R: TMB'S PHYSICIAN PROFILE FOR PLAINTIFF………………………………17
EXHIBIT S: PLAINTIFF'S RELIANCE ON 8/1/13 LETTER……………………………………………………………....…………16, 34
EXHIBIT T: TMB COMPLAINT TO SOAH 4/29/14………………………..…………………17
EXHIBIT U: JORDAN'S JUNE 2014 EMAILS TO PLAINTIFF……………………..…...6, 20
EXHIBIT V: JORDAN'S EMAILS RE: SUBPOENA REQUEST BY PLAINTIFF…………..20

**EXHIBIT B: JORDAN EMAIL RE: ISC**

*Exhibit 1/11*



Terrie Cooper <Terrie.Cooper@tmb.state.tx.us>                    Tue, Dec 17, 2013 at 11:36
                                                                                   AM
To: "jsimmsmd@gmail.com" <jsimmsmd@gmail.com>
Cc: Barbara Jordan <Barbara.Jordan@tmb.state.tx.us>

Dear Dr. Simmons,


Please see the attached letter notifying you that your 12/18/13 disciplinary ISC has
been rescheduled.  This letter was also sent by Federal Express to the address you
have on file with the Texas Medical Board, confirmation of delivery received.  I'm
emailing it to you at your last known email address in an extra effort to get this
information to you so that you don't travel unnecessarily.


If you have any questions you may call me at the number listed below, or you may
call Barbara Jordan at 512-305-7106.



Sincerely,



*Terrie Cooper*

*Legal Assistant*
Texas Medical Board
333 Guadalupe, Tower 3, Suite 610
Austin, Texas  78701
512-305-7040
512-305-7007 (Fax)



**Reschedule Notice.docx**
77K

**Barbara Jordan** <Barbara.Jordan@tmb.state.tx.us>              Thu, Jan 30, 2014 at 11:44

12

**EXHIBIT C: TMB LETTER RE: ACTIVE INVESTIGATION**





# Texas Medical Board

Mailing Address: P.O. Box 2018 • Austin, Tx 78768-2018 • Location Address: 333 Guadalupe Tower 3 Suite 610 Austin TX 78701
Phone (512) 305-7100 • Fax (512) 305-7123

August 1, 2013

JASON LEVON SIMMONS MD
487 MYRTLE AVE #2
BROOKLYN, NY  11205

Re: File # 10-5774

Dear Dr. SIMMONS :

Our investigation is still active. We will continue to keep you informed at least every three months about the status of this file until a final determination is made. You will be notified in writing of the final determination.

Sincerely,

Texas Medical Board

xc: OSCAR SAN MIGUEL

90DaySubltr.doc

# EXHIBIT F: PLAINTIFF'S SOAH APPEARANCE

 **Gmail**                                    Jason Simmons <jsimmsmd@gmail.com>

---

## SOAH Document Upload System - Upload Notification
1 message

**webupload@soah.state.tx.us** <webupload@soah.state.tx.us>          Fri, Jun 20, 2014 at
                                                                        10:13 AM
To: jsimmsmd@gmail.com

    Successfully Transferred Files
    DSC_1920.JPG --- 3.746 MB --- Time:06/20/14 10:12:23.82 DSC_1921.JPG --- 3.637 MB ---
    Time:06/20/14 10:12:55.95 DSC_1922.JPG --- 3.161 MB --- Time:06/20/14 10:13:23.22
    Total: 3 files
    Files Deleted: None
    Total Time taken: 0.45 minutes

# EXHIBIT G: TMB DENIAL OF PLAINTFF'S REQUEST FOR SUBPOENA



## EXHIBIT J: NEW YORK STATE DEPARTMENT OF HEALTH OPMC #CO-13-07-3474A

**NEW YORK**
state department of
**HEALTH**

*Exhibit C-14*

Nirav R. Shah, M.D., M.P.H.
Commissioner

Sue Kelly
Executive Deputy Commissioner

March 31, 2014

**PERSONAL AND CONFIDENTIAL**

Jason Simmons, M.D.

Brooklyn, NY 11234

RE: OPMC # CO-13-07-3474A

Dear Dr. Simmons:

As required by the New York State Public Health Law, the Office of Professional Medical Conduct has investigated allegations of professional medical misconduct against you. We have reviewed those allegations and the information provided. We have concluded our investigation and closed the case without further action anticipated. A permanent, confidential record of the information gathered will be retained on file in our office.

Because a medical misconduct investigation is not a disciplinary proceeding, we are prohibited from providing you, your counsel, or anyone else with further information regarding our inquiry or the source of the allegations. This is done to protect your confidentiality as well as that of the complainant.

Thank you for your cooperation in resolving this matter.

If you wish to discuss this matter further, please contact me at 518-402-0820.

Sincerely,

Director, Direct Referral Unit
Office of Professional Medical Conduct

**HEALTH**.NY.GOV
facebook.com/NYSDOH
twitter.com/HealthNYGov

23

**EXHIBIT S: PLAINTIFF'S RELIANCE ON 8/1/13 LETTER**

**Jason Simmons** <jsimmsmd@gmail.com>                    Wed, Aug 28, 2013 at 12:01 PM
To: Barbara Jordan <Barbara.Jordan@tmb.state.tx.us>

    Barbara,

    Please find my motions for the Medical Board to review objective
    evidence for their ongoing investigation per their letter 8/1/13...

    **3 attachments**

       **tmbaug.pdf**
       17K

       **admit.pdf**
       92K

       **prod.pdf**
       57K

56

**EXHIBIT U: JORDAN'S JUNE 2014 EMAILS TO PLAINTIFF**

SOAH NO. 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
7 messages

---

Barbara Jordan <Barbara.Jordan@tmb.state.tx.us>                     Fri, Jun 13, 2014 at 10:46 AM
To: "Jason Simmons (jsimmsmd@gmail.com)" <jsimmsmd@gmail.com>
Cc: Mary Nastasi <Mary.Nastasi@tmb.state.tx.us>

Dear Dr. Simmons,


Your Texas Medical License has been cancelled due to non-payment.  Accordingly,
the Complaint filed against you at the State Office of Administrative Hearings is moot,
and I will file a motion to dismiss.  I am writing to confer with you on this motion.  Do
you agree with or oppose this motion?



Thank you for your time.



Sincerely,

**Barbara Jordan**

**Staff Attorney**

**Texas Medical Board**

**P.O. Box 2018**

**Austin, Texas 78768-2018**

**(512) 305-7106 (ph)**

**(512) 305-7007 (fax)**

**The information contained in this E-Mail/attachment(s) may be privileged
and/or confidential, private or otherwise protected by law.  If you are not the
intended recipient, you are hereby notified that any disclosure or
dissemination to anyone other than the individuals or entities named above is
strictly prohibited.**

58

Cc: Mary Nastasi <Mary.Nastasi@tmb.state.tx.us>

Dear Dr. Simmons,

Yes, the Final Order terminated because your license is no longer active.  You may recall our earlier discussion where I explained that when a physician's license expires, it remains in "delinquent non-payment" status for one year before permanently cancelling.  (Tex. Occ. Code § 156.005).  The only exception is when a licensee has an investigation pending.  Your license permanently cancelled last week, on June 11, 2014.

Thank you for your time.

Sincerely,
Barbara

-----Original Message-----
From: Jason Simmons [mailto:jsimmsmd@gmail.com]
[Quoted text hidden]

---

**Jason Simmons** <jsimmsmd@gmail.com>          Thu, Jun 19, 2014 at 6:32 PM
To: Barbara Jordan <Barbara.Jordan@tmb.state.tx.us>

We are still arguing for a Proposal For Decision from the SOAH correct? In regard to an investigation where the TMB did not admit evidence (during the pending investigation) and also affects your website and if I get jobs?

On Thu, Jun 19, 2014 at 1:25 PM, Barbara Jordan
[Quoted text hidden]

---

**Jason Simmons** <jsimmsmd@gmail.com>          Fri, Jun 20, 2014 at 6:17 PM
To: Barbara Jordan <Barbara.Jordan@tmb.state.tx.us>

Please find my motion for a prehearing conference attached. Thanks

-Jason
[Quoted text hidden]

📄 **prehearing.pdf**
49K

[Quoted text hidden]

**EXHIBIT V: Jordan's Emails Re: Subpoena Request by Plaintiff**

**Barbara Jordan** **<Barbara.Jordan@tmb.state.tx.us>**                    7/3
                                                                          /14

to me

Dear Dr. Simmons,

Subpoena requests go to the General Counsel department, not to Litigation.  You can fax or mail your request
to the address below:

General Counsel
Texas Medical Board
P.O. Box 2018
Austin, TX 78768-2018
512-305-7007 (Fax)

Thank you,
Barbara

**Barbara Jordan** **<Barbara.Jordan@tmb.state.tx.us>**                    7/9
                                                                          /14

to me

I believe you submit the payment to the same address .


-----Original Message-----
From: Jason Simmons [mailto:jsimmsmd@gmail.com]
Sent: Wednesday, July 09, 2014 6:41 AM
To: Barbara Jordan
Subject: DEPOSIT?

How do I make the deposit to the TMB for the subpoena?

-Jason

61

I MMONS
7 Myrtle Ave #2
Brooklyn NY 11205

SCREENED BY CSO
NOV 27 2017

CLERK'S OFFICE
US DISTRICT CLERK'S OFFICE
501 WEST FIFTH STREET
STE 1100
AUSTIN, TX 78701



PLACE THIS LABEL TO THE LEFT OF THE POSTAGE

USPS CERTIFIED MAIL™

9502 6000 3223 7328 0001 16



U.S. POSTAGE
$15.05
PM 2-DAY
10001 0004
1125 2900
11/24/17
0838367
SSK